## THE CIMBRIA.

(District Court, D. New Jersey. May 12, 1914.)

MARITIME LIENS (§ 37*)—VESSEL OWNED BY CORPORATION—SUPPLIES FURNISHED BY DIRECTOR.

A stockholder and director in a steamboat company, who took an active part in the management of its business, was in essence a part owner of its vessels, and as against strangers to the title who have maritime liens is not entitled to a maritime lien on one of the company's vessels for supplies furnished or for advances made to pay claims for repairs and supplies.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 58–70; Dec. Dig. § 37.*]

In Admiralty. Suit by John Gallaher against the steamboat Cimbria. On review of report of commissioner. Confirmed in part.

Hyland & Zabriskie, of New York City, for Gallaher.
Conway, Williams & Kelly, of New York City, for Rockland County Trust Co.

RELLSTAB, District Judge. Libelant was a stockholder and director of the New York & Rockaway Beach Transportation Company,

the owner of the Cimbria. He was familiar with the financial condition and the business of such company, and participated in its management. He had a desk in the company's office, and carried on no other business during the period covered by his claim. Some of the company's moneys were mingled with his own, deposited by him in his own bank account, and used by him to pay some of the company's bills. His libel alleges that there is due him the sum of $784.33, for which he claims a maritime lien. Of this sum, $146 is for supplies furnished to the boat. The remainder, $638.33, is the aggregate of moneys advanced by him to pay some of the company's indebtedness, incurred in repairing such vessel and furnishing it with supplies.

The commissioner, acting under a stipulation filed in the cause that he should report not only as to the amount due libelant, but also whether he was entitled to a maritime lien against such vessel, reported that he was so entitled for the first named sum, but not for any of the items totaling that last mentioned. With reference to the latter, he said:

"I am satisfied that an officer of a company owning a vessel, standing in the position occupied by this libelant, does not have a maritime lien for the amounts advanced by him for the purpose of the operation of a vessel; also, that this was a mere advance of money by one in authority, rather than the advances of one on the request of one in authority having the right to bind the ship. The New York & Rockaway Beach Transportation Company could not file a claim for money expended by it in paying the debts of the steamer, and on the same line of reasoning I think that a managing director cannot have a lien for funds advanced by his personal check issued to keep the vessel in operation, and this especially in view of the fact that Mr. Gallaher had on at least one occasion the moneys of the company deposited in his personal bank account, and had advanced them for the company's purposes without apparently having rendered any account of them to the company."

A maritime lien does not exist in favor of the owner or any other person who does not render services or furnish supplies to and on the credit of the vessel. It depends upon a tacit hypothecation, implied in law; the theory being that the ship's necessities, in the absence of the owner's personal credit, can only be relieved by pledging her, and therefore excludes owners.

Whether a part owner can, in any circumstances, obtain a maritime lien against his partner, is not settled, the authorities being in conflict; but it is clear, on principle as well as authority, that as against a stranger to the title, having a maritime lien, no such lien can be enforced by one who, as part owner, is himself liable for the debt underlying such lien. Petrie v. The Steam Tug Coal Bluff No. 2 (D. C.) 3 Fed. 531; The Benton, 3 Fed. Cas. 256, No. 1,334.

Maritime liens are an exception to the rule which disfavors secret liens. This exception, when limited to strangers to the title, has sound public policy for its support. To extend the exception, and allow the owner and those standing in privity with him to have a secret lien upon the vessel, would open the door to fraud and collusion, be contrary to such policy, and tend to destroy the very protection which the exception is designed to secure, viz., that strangers to the title of the vessel who, by the rendition of services and the furnishing of supplies on its credit, give it means and opportunity to fulfill the purpose of its being, should have the vessel in its entirety as security. A stockholder of a

corporation owning a vessel, while not holding the legal title, is in essence a part owner of such vessel. See The Queen of St. Johns (C. C.) 31 Fed. 24. In the present case, libelant was more than a mere stockholder. He was a director and actively engaged in transacting the business, involving both the company's finances and its use of the vessel. The depositing of the company's funds in his own personal bank account, and his checking it out in payment of the company's bills, prove such a close identification of himself with the company's affairs as to create the presumption that in his subsequent sale of merchandise to the company, and his advances to pay their bills, which are now asserted as maritime liens, he was looking, not to the boat, but exclusively to the company, from whose receipts he expected to reimburse himself. That a fortuitous happening—collision—frustrated this expectation, is no reason why he should be permitted to transfer the credit to the boat, to the prejudice of strangers who have strict maritime liens. As to these, libelant stands in the place of the owner; and, as against such lienors, his claim must be postponed, whatever may be its merit or standing against the owner, and regardless of whether it would be a lien against "remnants and surplus." The conclusion here reached, while contrary to that reached in The City of Camden (D. C.) 147 Fed. 847, is fully supported by The Murphy Tugs (D. C.) 28 Fed. 429, and The Queen of St. Johns (C. C.) 31 Fed. 24, which, squaring more with my own judgment, I am constrained to follow.

The commissioner has distinguished between the advances made by libelant and the value of the goods furnished by him, allowing a lien for the latter; but as, in my judgment, the libelant must be alligned with the owner, and not with strangers to the title, in the matter of his dealings with the company and its vessel, I am constrained to disallow his claim for supplies furnished, as well as that for advances. I fail to see how he can be entitled to one and not the other; or, rather, how he can be said not to have a lien for the one and still have one for the other. In parting with his money in making advances, he parted with his property just as much as when he turned over the supplies, and his relation to the company and the vessel in selling them the supplies is no different from his relation in advancing money. In both instances he did it as one having an interest in the company, its property, and enterprises, and he must be held to have dealt exclusively on the credit of the owner; and, while against it he is entitled to be reimbursed, he is not entitled to a maritime lien therefor as against strangers to the title who admittedly have maritime liens for the amounts due them.

The conclusions of the commissioner as to the merchandise sold to the company must be disaffirmed, and those relating to advances affirmed. A decree may be entered in conformity with this opinion.