THE NATCHEZ.

(District Court, E. D. Louisiana. July 12, 1916.)

No. 15221.

1. MARITIME LIENS ⊕⟶31—REPAIRS—ADVANCES BY STOCKHOLDERS OF CORPORATION OWNER.

The stockholders of a corporation which is the owner of a vessel are not entitled to a maritime lien for money advanced to the corporation to make repairs as against third persons who furnish work and material in making the repairs.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 40; Dec. Dig. ⊕⟶31.]

2. COMMERCE ⊕⟶80—STATUTORY LIENS—FOREIGN VESSELS.

A state law cannot give a maritime lien on a foreign vessel.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. ⊕⟶80.]

In Admiralty. Suit by the Alex Dussel Iron Works and others against the steamer Natchez. On exceptions to report of commissioner. Sustained in part.

Andrew M. Buchmann, of New Orleans, La., for libelant Dussel Iron Works.

Carsten Torjusen, of New Orleans, La., for intervener Estate of John Laskey.

Carsten E. Torjusen, of New Orleans, La., for intervener Estate of Morris Waller.

Rice & Montgomery, of New Orleans, La., for intervener Ahrens & Ott Mfg. Co.

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Farrar, Jonas, Goldsborough & Goldberg, of New Orleans, La., for claimant Natchez Transp. Co.

Rice & Montgomery, of New Orleans, La., for intervener Frerichs Lumber Co.

Rice & Montgomery, of New Orleans, La., for intervener Monongahela River Consol. Coal & Coke Co.

H. W. Robinson, of New Orleans, La., and Frederick B. Freeland, for intervener Widmer Electrical Engineering & Const. Co.

James E. Zunts, of New Orleans, La., for intervener Dibert, Bancroft & Ross Co., Limited.

Burt W. Henry, of New Orleans, La., for intervener Woodward-Wight Co.

James E. Zunts, of New Orleans, La., for intervener H. W. Johns-Manville Co.

Alfred C. Kammer, of New Orleans, La., for intervener Chas. E. Levy.

John D. Grace, of New Orleans, La., for intervener Wm. A. Duke.

Alfred C. Kammer, of New Orleans, La., for intervener M. Levy & Sons

FOSTER, District Judge. This is a libel in rem by the Alex Dussel Iron Works against the steamer Natchez for repairs. Various other persons have intervened, asserting similar liens. The boat was seized by admiralty process, and, the owners failing to bond, she was sold by the marshal under a writ of venditioni exponas, and the proceeds deposited in the registry of the court. The matter was then referred to a commissioner to take the proof on the various claims, amongst which appear the following: W. A. Duke, $1,347; Charles E. Levy, as assignee of Henri Bernard, $335; and M. Levy & Sons, $500. In due course the commissioner reported, finding in favor of libelant and other materialmen, reducing the claims of Duke and Charles E. Levy to $1,118.50 and $269.50, respectively, and rejecting the claim of M. Levy & Sons entirely. The commissioner's report as to the other claims is not excepted to, but libelants and other interveners object to the allowance of anything to Duke, Charles E. Levy, or M. Levy & Sons. M. Levy & Sons except to the rejection of their claim, but Duke and Charles E. Levy are satisfied with the amounts awarded them.

The material facts are these: The steamer Natchez was bought in 1902 for $14,500 at a marshal's sale by the Natchez Transportation Company, a Mississippi corporation, of which W. A. Duke, Jonas H. Levy, and the estate of W. G. Coyle are the sole stockholders. Duke was captain of the boat and president of the company, Levy, a director. The capital stock was divided into 400 shares. Of these Duke owned 114, Levy, 133, and the estate of Coyle, 153. The Natchez ran between New Orleans and various other points on the Mississippi river, but from November, 1911, was laid up for about two years. The stockholders of the company then concluded to repair her and put her in commission. The corporation had not a cent in the treasury, and no assets except the Natchez. A meeting of the board of directors, at which Duke, Jonas Levy, and representatives of the Coyle estate were

present, was held, and Duke was authorized to spend approximately $9,000 to $10,000 on the repairs, and it was agreed that the stockholders would each contribute his proportion of the expense. The work was proceeded with, but the only amounts contributed by the stockholders towards paying for it were $940.95 by the estate of Coyle, $500 by Jonas Levy, and $1,347 by Duke. At the sale under the proceeding in this court, the Natchez sold for $6,500, which, after deducting costs, leaves $5,986.05 available for the payment of debts. Against this there are claims amounting to $9,957.25. Deducting the claims herein in controversy, the total claims filed amount to $8,068.75, which would give the materialmen about 75 per cent. of their claims. When sold in this case the Natchez was bought in by the Merchants' Transportation Company, a corporation of which M. Levy & Sons and W. A. Duke are stockholders. Duke is again captain under the new ownership. The estate of Coyle makes no claim for the money advanced by it.

### Claim of Duke.

[1] It must be conceded that the amount advanced by Duke was properly used for necessary repairs, and, had it been loaned by a third person on the credit of the vessel, would have entitled him to a lien equal in rank with those of the materialmen. It is contended by the opponents, however, that as an individual owning the boat and advancing money for her repairs would have no lien, Duke, as president of the company and a stockholder, is in no better position, as he is virtually a part owner. In support of this they rely on the cases of The Murphy Tugs (D. C.) 28 Fed. 429; The Queen of St. Johns (C. C.) 31 Fed. 24; The Cimbria (D. C.) 214 Fed. 131. Counsel for Duke, however, cites to the contrary the case of The City of Camden (D. C.) 147 Fed. 847, and various cases dealing with loans to corporations by stockholders and officers, but none of which involve maritime or other secret liens. Doubtless in some situations a stockholder or an officer of a corporation may equitably acquire a lien on the corporate property superior to creditors. And perhaps the part owner of a vessel may be sometimes equitably preferred as against his co-owners, or others not having maritime liens; but as to this no opinion is called for by the facts in this case, and I express none.

In this case the corporation was organized merely for the purpose of owning and operating the boat. The corporation was dormant and the boat laid up. It had no other assets and presumably no debts. If it had been liquidated and the boat sold, Duke would have received his proportion of the purchase price. If, on the other hand, they elected to run the boat, it was incumbent on the stockholders to furnish the money to pay for the repairs. The informal agreement for each stockholder to stand his proportion of the expense was tantamount to an assessment on the stock, and any money advanced could be hardly considered a loan to the corporation. But beyond this the stockholders were the real owners of the boat, though the legal title was in the corporation. When the materialmen were requested to furnish supplies and repairs, they had the right to expect payment from the own-

ers, and not be forced to seize and sell the boat, except as a last resort. Courts of admiralty administer the broadest equity, and in these circumstances it would be inequitable to the last degree to grant a secret lien to the virtual owners of the vessel to the prejudice of the materialmen because of the legal fiction of her ownership by a corporation. These conclusions are supported by the cases of The Murphy Tugs, The Queen of St. Johns, and The Cimbria, supra, which I prefer to follow rather than the decision in The City of Camden. The other decisions relied on by the commissioner I do not consider applicable to the facts of this case.

### Claim of M. Levy & Sons.

The commissioner was clearly right in rejecting the claim of M. Levy & Sons for want of evidence to support it. All of the facts in the record tend to show that the money was advanced by Jonas Levy, a member of the firm, who makes no claim, and is a stockholder of record in the same position as Duke. Furthermore, there is much to indicate that M. Levy & Sons are the real owners of the stock standing in the name of Jonas Levy. It was so stated in argument, and not denied, though claimant has been afforded the opportunity to adduce additional proof on the subject.

### Claim of Charles Levy.

[2] Charles Levy is a member of the firm of M. Levy & Sons, and if the firm is the real owner of the Jonas Levy stock, of course the same objection would apply to his claim as to that of Duke. But in addition he claims as the subrogee of a watchman employed while the boat was laid up. It may be considered settled that a watchman under such circumstances has no lien under the general maritime law, or the act of June 23, 1910 (Act June 23, 1910, c. 373, 36 Stat. 604). The Sinaloa (D. C.) 209 Fed. 287; The John T. Moore, Fed. Cas. No. 7,430. Innumerable other cases to the same effect might be cited. Claimant, however, relies on article 3237 of the Civil Code of Louisiana as giving a lien for such services, and not superseded in this particular by the act of June 23, 1910. But state laws do not create maritime liens on foreign ships. The Roanoke, 189 U. S. 185, 23 Sup. Ct. 491, 47 L. Ed. 770.

For these reasons, the exceptions of M. Levy & Sons to the commissioner's report will be overruled, and the exceptions to allowance of the claims of Duke and Charles Levy will be maintained and the said claims rejected.

There will be a decree accordingly.