## THE GLOUCESTER.

(District Court, D. Massachusetts. January 12, 1923.)

No. 1922.

1. **Corporations** ⊜⇒1—**Separate entity distinct from stockholders, unless resorted to for fraud.**

Though courts can, when a corporate form of organization has been resorted to for fraudulent purposes, disregard the form and look to the individuals behind it, the general rule is that a corporation is a separate entity, distinct from its stockholders.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Maritime liens ⬦⬦6—Common stockholders and officers held not to prevent lien for supplies.**

The fact that the corporation furnishing supplies to a vessel and the corporation owning the vessel had largely the same stockholders and many of their officers were identical does not make the supply corporation a part owner of the vessel, nor indicate the supplies were furnished on the credit of the owning corporation, if the managing officers of the two corporations, by whom the supplies were sold and purchased, were different, and there was no showing that the supply corporation used its relationship to compel the vessel to purchase supplies from it.

**3. Maritime liens ⬦⬦6—Relations between claimant and vessel which prevent lien stated.**

A maritime lien is denied to a party, who would otherwise be entitled to it because of his relation to the vessel, only when he is either a real part owner of the vessel, occupies a fiduciary relation toward her and her owners, or deals with himself on her account; that is, the lien is denied because of insuperable legal difficulties in the enforcement of it, or because to recognize it would be inequitable to the other claimants.

In Admiralty. Libel by the Portland Shipbuilding Company and others against the beam trawler Gloucester. Report of commissioner modified and confirmed.

George F. Gould and Nathan W. Thompson, both of Portland, Me., for libelants.

Robert Payson, of Portland, Me., for petitioner Portland Co.

Gerry L. Brooks, of Portland, Me., for petitioners Staples Coal Co. and Harry Curran.

Frederick H. Tarr, of Gloucester, Mass., for claimant.

Stephen R. Jones and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., for Bertelsen & Peterson Eng. Co.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for petitioners King and others.

Nathan W. Thompson, of Portland, Me., for petitioner Anchor Packing Co.

Geo. F. Merrill, of Gloucester, Mass., for C. T. Levett Co.

Elliott C. Rogers, of Gloucester, Mass., for Gorton-Pew Vessels Co. and Gorton-Pew Fisheries Co.

J. M. Marshall, of Gloucester, Mass., for petitioners Marr-Christenden and Rocky Neck Marine Ry. Co.

J. Joseph Carraher, of Boston, Mass., for Eugene P. Connelly.

Gaston, Snow, Saltonstall & Hunt, of Boston, Mass., for petitioner Sidney Foundry & Mch. Wks.

Miles Wambaugh and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., for Com. Ice & Cold Storage Co.

Wm. W. Risk, of Boston, Mass., for petitioner Ross Towlt Co.

W. G. Clark, of Gloucester, Mass., for petitioner John A. Johnson, Inc.

MORTON, District Judge. The commissioner has disallowed the claims of the Gorton-Pew Fisheries Company (which I shall refer to as the Fisheries Company), the Gorton-Pew Vessels Company (which I shall refer to as the Vessels Company), and the Fort Wharf

---

⬦⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Company, and the present questions are whether he was right in so doing.

As to the Fort Wharf Company, its claim is not now insisted on, and the commissioner's action is confirmed.

As to the other two claims, the commissioner found that the supplies and repairs had been furnished as claimed. While he makes no express finding that the prices charged were reasonable, I infer from the report that there was no contention to the contrary, and that such was the fact. He found and ruled that no maritime lien existed because of the relation in which those companies stood to the Cape Ann Otter Trawler Company, the owner of the Gloucester. Taking first the bill of the Fisheries Company, it appears that the company owned $25,000 out of $186,200 capital stock in the trawler company. Its president, B. A. Smith, was also a stockholder in the trawler company and for a time its financial officer, its books being kept in his office, and the directors of the two companies were to some extent identical. The actual management of the trawler company was, however, in the hands of Capt. Spinney, who was not in any way connected with the Fisheries Company and does not appear to have been coerced or unduly influenced by it or its officers in his management of the trawler company, buying and selling for it where he thought best. In the Fisheries Company "T. J. Carroll, vice president and manager, was the moving spirit" (Report, p. 11). He took no active part in the management of the trawler company. The Fisheries Company dealt publicly in ship stores and supplies, and sold to many vessels besides those of the Gorton-Pew fleet. There is no finding or suggestion in the report that the Fisheries Company or its managers took unfair advantage of their position as stockholders or officers in the trawler company, and there appears to be nothing really inequitable or unfair to other claimants in allowing the bill of the Fisheries Company. My inference from the report is that the supplies were furnished without any special understanding as to credit, in the same general way as supplies were furnished to vessels, other than the Gorton-Pew vessels, which bought from the Fisheries Company, and under circumstances which would ordinarily create a maritime lien.

[1, 2] The commissioner disallowed the bill on the ground that, as the Fisheries Company was a stockholder in the trawler company and the officers of the two companies were to some extent identical, there was a presumption that the sales were made on the credit of the trawler company and not of the vessel, and that, as no evidence had been offered to rebut this presumption, it controlled the decision. He relied in so doing on the analogy furnished by cases in which part owners of vessels who had sold supplies to them were held not entitled to a maritime lien. The Fisheries Company and Smith can be considered part owners in the Gloucester only by disregarding the corporate entity of the trawler company, which was in law and in fact her real owner. When a corporate form of organization has been resorted to for fraudulent purposes, courts under some circumstances disregard it and look to the individuals behind it; but the

general rule is that a corporation is a separate entity distinct from its stockholders. In the present case there was no identity of buyer and seller, either theoretical or actual; the officers of the Fisheries Company took no part in the actual management of the Gloucester, and the persons who bought supplies for her were not connected with the Fisheries Company, and, as above stated, the transactions do not appear to have been unfair or even suspicious.

[3] To say that the rights of the Fisheries Company in an honest and ordinary transaction are diminished, and for practical purposes lost, because of the relations between it and the trawler company, would be a result which is plainly unjust and should not be reached, unless unavoidable under the decided cases. I do not think that the cases lay down so strict a rule. As the commissioner points out, Judge Brown said (in The Murphy Tugs [D. C.] 28 Fed. 429):

"The mere fact that he [the person claiming the lien] was a director and stockholder would [not] necessarily prevent his contracting with the company, nor from acquiring a lien upon the property."

In The Puritan (D. C.) 258 Fed. 271 it was the fact that the libelant was agent of the vessel, as well as a stockholder in the company owning her, which created the doubt. That decision is in no way inconsistent with Judge Brown's opinion. Without undertaking to analyze all the cases which have been relied on against this claim—the principal ones are referred to in the footnote at the end—I think it will be found that, where a party who would otherwise have a maritime lien has been held not entitled to it because of the relation in which he stood to the vessel, he was either (1) a real part owner of her, or (2) occupied a fiduciary relation towards her and her owners, or (3) dealt with himself on her account. Even within these classes the lien has under peculiar circumstances occasionally been allowed. In other words, the lien is really denied because of insuperable legal difficulties in the enforcement of it, or because—on grounds similar to estoppel—to recognize it would be inequitable to other claimants. Neither of those obstacles exists in the present case. The facts stated in the report do not, therefore, seem to me sufficient ground for holding that there is a presumption against the lien of the Fisheries Company and that the credit was extended by it to the trawler company and not to the vessel, nor for denying to the Fisheries Company the usual rights accorded by statute to those furnishing supplies and repairs to vessels. The claim of the Fisheries Company will therefore be allowed.

The claim of the Vessels Company was disallowed by the commissioner for the reason that all the stock of the Vessels Company was owned by the Fisheries Company, and it was therefore, in his opinion, to be regarded, for the purposes of this suit, as the same concern. The Vessels Company owned no stock in the trawler company. This claim is no more open to objection, to say the least, than the claim of the Fisheries Company. What has been said with regard to the latter claim applies also to the objections made against this one. It may be allowed.

A decree may be entered, confirming the commissioner's report, except as herein modified.

## NOTE.

In The Queen of St. Johns (C. C.) 31 Fed. 24, the claimant to the lien "was the president of the incorporated company owning the vessel, and as such he was one of her managers, and actively participated in the management. ＊ ＊ ＊ He himself made all his advances while he was at the home port and was managing for the owners." Pardee, J., at page 28.

In The Murphy Tugs, 28 Fed. R. 429, the claimant's "position as the legal custodian of its funds is strong evidence to show that he relied upon the personal credit of the company, or rather upon his ability to pay himself out of its funds, and his lien should therefore be postponed to that of the other creditors." Brown, J., at page 432.

In The St. Joseph, Fed. Cas. 12,229, the claimant was general agent and superintendent of the line of boats, besides being a stockholder; he received money belonging to the corporation, and was therefore regarded as having given credit to the company, and not to the vessel.

In The Cimbria (D. C.) 214 Fed. 131, the libelant, besides being a stockholder, participated in the management of the company, deposited some of the company's money with his own, and paid some of the company's bills out of this deposit. It is expressly pointed out in the opinion that the "libelant was more than a mere stockholder." Page 133.

In The Gyda (D. C.) 235 Fed. 266, the libelant was not only a stockholder, but also a director in the corporation owning the vessel, and its treasurer and general manager in full charge of its affairs.

In The Natchez (D. C.) 236 Fed. 588, the libelant was president of the company owning the vessel, as well as a stockholder. The corporation was dormant and the boat laid up. It is said: "Doubtless in some situations a stockholder or an officer of a corporation may equitably acquire a lien on the corporate property superior to creditors."

In The City of Camden (D. C.) 147 Fed. 847, the treasurer of a corporation owning and operating a vessel, who loaned money to the company to pay off claims upon the explicit understanding that the loan was made on the credit of the vessel, was held entitled to a maritime lien. The case is very similar to The Puritan, supra, where the lienor was the agent of the vessel.