**PASCAGOULA DOCK STATION, a**
Partnership, Appellant,

v.

**MERCHANTS AND MARINE BANK,**
Intervenor, Appellee.

No. 17682.

United States Court of Appeals
Fifth Circuit.

Sept. 30, 1959.

John F. Bryan, Jr., Johnston & Bryan, Pascagoula, Miss., for appellant.

Charles D. Marshall, New Orleans, La., J. I. Ford, Pascagoula, Miss., Charles W. Howard, Jr., New Orleans, La., Milling, Saal, Saunders, Benson & Woodward, New Orleans, La., of counsel, for appellee.

Before JONES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

We here deal with questions of the validity of a preferred ship mortgage, 46 U.S.C.A. § 922, on the fishing vessel M/V T. E. Welles and the correctness of the Trial Judge's action in holding that the preferred ship mortgage to the Bank outranked a prior maritime lien in favor of Pascagoula Dock Station.

The litigation began as a libel *in rem* filed July 18, 1958 by Pascagoula to enforce a lien in the sum of $1,933.95 (less a credit of $50 subsequently established) for fuel and stores supplied to the vessel over the period from March 8, 1956 through February 16, 1958. Of this sum, a total of $1,282.12 was for services and stores supplied prior to March 29, 1957, the date on which the Bank's preferred ship mortgage was recorded. The remainder of approximately $600 arose from the supplies and stores furnished subsequent to the effective date of the preferred ship mortgage.

The Bank as mortgagee intervened in the libel *in rem* against the M/V T. E. Welles then under seizure to assert the priority of the mortgage even though at that time the vessel owners, mortgagors, were not in default. As the Owner-Claimants could not post security to release the vessel, the Court, with agreement of all parties, ordered the vessel sold and the proceeds paid into the Registry. In the course of the hearings, the Court adjudged the Bank's preferred ship mortgage lien in the sum of $5,230.54 to be valid and prior to the maritime lien of Pascagoula fixed in the amount of $1,883.95. The vessel was sold for $5,500 which was less than required to satisfy the Bank's preferred mortgage lien and court costs.

## I.

*Validity of Preferred Ship Mortgage.*

Pascagoula, appealing here, asserts that the preferred mortgage was invalid, which would assure prior ranking for the full amount of the maritime lien, and that in any case the maritime lien to the extent of $1,282.12 for services and stores supplied prior in time to the preferred ship mortgage is prior in right.

The general attack on the validity of the preferred ship mortgage we find to be of little substance. It is now acknowledged, although great and justifiable doubt existed below, that an affidavit of good faith required by Section 922(a)(3), 46 U.S.C.A. was actually filed with the Collector of Customs. Pascagoula nevertheless contends that even though the affidavit was obtained by the Bank and filed, the mortgage could not have been taken in good faith since no adequate inquiry was made by the Bank of the mortgagor concerning outstanding debts and liens.

Since the statute requires an affidavit of good faith by the mortgagor, we may assume that, on proof and finding that mortgagor and mortgagee undertook to use the device of a preferred ship mortgage in fraud of creditors, and hence with a design to hinder, delay and defraud any existing or future creditor or any lienor of the vessel, the mortgage would lose its preferred status. But except for such circumstances there is no statutory obligation on the part of the mortgagee to make any inquiry. It might, of course, affect the status of the mortgage as to prior liens—just as it perhaps does here concerning the $1,282.-95—but an absence of inquiry does not vitiate the mortgage as such. The mortgagee may, and perhaps ought for his own protection, require the mortgagor to disclose in writing prior to the execution of the mortgage the existence of any maritime liens, prior mortgages or other obligations. 1 Benedict, Admiralty 175 (6th ed. 1940). He may demand such disclosure, 46 U.S.C.A. § 924. The mortgagee is given strong protection by crim-

inal sanctions against a mortgagor who fraudulently misstates facts concerning outstanding liens. 46 U.S.C.A. § 941(b).

■ Next, the contention is made that the mortgage was invalid since for a single debt of $11,500 the Bank took simultaneous preferred ship mortgages on the M/V T. E. Welles and also on another fishing vessel, M/V Glenn and Kay, one-half of which was owned by the owner of M/V T. E. Welles. And, it is claimed, if this did not make the mortgage on the M/V T. E. Welles invalid as such, the Bank's priority was destroyed because the Bank, on the private sale of the M/V Glenn and Kay, required the mortgagors to pay to the Bank only $3,425 out of the sales price of $7,500. Pascagoula apparently argues backwards from the prohibition on a preferred ship mortgage covering property other than a vessel in the absence of express provision for separate release, 46 U.S.C.A. § 922 (e), and the requirement that if *a* mortgage includes more than one vessel express provision must either be made for separate release or the admiralty court on foreclosure shall fix it on a pro rata value plus 20 per cent. 46 U.S.C.A. § 922 (f). But the statute does not impliedly forbid separate and distinct preferred ship mortgages on several vessels as security for a single debt. The purpose behind Section 922(e) and (f) is to make certain that where several properties are covered in a *single* mortgage that the special statutory mortgage lien shall or may be released as to any one property on the payment of a specified or ascertainable sum. Gilmore & Black, Admiralty 580–83 (1957); see also 46 U.S. C.A. § 954(b). Where the mortgage covers but a single vessel, there is no need to apportion as between it and nonmaritime property or other vessels. In such case the documents of the particular vessel concerned will reflect that she is subject to a full preferred ship mortgage lien to the extent of the debt, whatever it might be.

The statute did not, therefore, make the mortgage invalid either initially or because of the voluntary apportionment on the sale of M/V Glenn and Kay. Apart from the statutory formula of pro rata plus 20 per cent, the Court expressly found on adequate facts that under equitable principles of marshaling of security the apportionment was fair.

■ Finally, it is claimed that the preferred ship mortgage was invalid because the mortgagee Bank did not take steps to see that a suitable notice was posted on the vessel concerning the existence of the preferred ship mortgage, and a copy of the mortgage was aboard. A printed or written notice in the wheelhouse or some other obvious place is, of course, good practice, but it is not required. It serves a dual purpose of bringing actual knowledge home to potential lienors of the existence of a preferred ship mortgage and may, if carefully drafted, constitute a notice prohibiting liens at all as permitted under the maritime lien statute. 46 U.S.C.A. § 973. Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861. Since Section 923 does require the Collector of Customs upon recording to deliver two certified copies of the mortgage to the mortgagor who "shall place, and use due diligence to retain, one copy on board the mortgaged vessel * * * to be exhibited * * * to any person having business with the vessel," a mortgagee runs the risk that the papers will never be properly placed aboard if, as the Bank did here, the papers are informally turned over to the vessel owner without precise receipts and instructions. But that uncertainty does not invalidate the mortgage in this case. That is so because the Court found, with ample support, that the certified copy of preferred ship mortgage was on board. It was hardly where it could be of ready use and its place of safekeeping deprived it of much notice. But it was there—safely and securely under the captain's mattress. Of course, the statute does not compel—at the price of invalidity of the mortgage—that the mortgagee instruct the master in the performance of his statutory duties. Nor does the failure of the master to perform the statutory

duty to exhibit "upon the request of any such person * * * the documents of the vessel and the copy of any preferred mortgage of the vessel placed on board thereof," 46 U.S.C.A. § 923, have that consequence. Civil sanctions are imposed on a non-complying master. 46 U.S.C.A. § 941.

We thus agree with the District Court that the preferred ship mortgage was valid in the amount adjudged by the Court. By the terms of the statute, the mortgage lien was preferred and paramount to maritime liens accruing subsequent to its effective date. The appellants therefore fail on the basic contention of invalidity and on the post-preferred ship mortgage liens approximately $600.

## II.

Priority of Preferred Ship Mortgage Over Pre-Mortgage Maritime Lien.

But the case stands much differently as to the pre-mortgage maritime lien (totaling $1,282.12) included within Pascagoula's maritime lien fixed by the Court ($1,883.95). The District Court allowed the lien, so he did not hold that the lien was *unenforceable*, as such. Rather he held that the whole lien ($1,883.95) "is subject to and subordinate to the preferred lien of the * * * Bank" and the pre-mortgage lien ($1,282.12) "is hereby found to be subordinate to the * * * preferred lien of the bank * * *." Just how or why the District Judge held as he did does not at first

appear. And where reasons are given, difficulties arise because some seem to be patently contradictory.

The Bank pleaded laches against Pascagoula and asserted that vigorously below and here. But the Trial Court, both in a detailed oral opinion delivered on the close of the extended arguments, and in its formal findings and decree, expressly rejected the doctrine of laches. Yet within but a few lines after the formal finding respecting the pre-mortgage lien that Pascagoula was "not guilty of laches" the Court holds the lien subordinate to the mortgage "by reasons of (1) delay on the part of libelants [Pascagoula] and (2) lack of knowledge of the * * * Bank, it being found that the Bank had no knowledge of such at the time of mortgage."

We cannot escape the conviction that while some possible analysis of these contradictions might be suggested to seem finally to harmonize them, the conclusions expressed by this careful Judge were a reflection of a basic misconception of the nature of the maritime lien in a priority contest with a preferred mortgage. The Court several times expressed the view that ignorance by the Bank of Pascagoula's existing liens gave the mortgage priority.[1] The Bank acknowledged before us that this is not, and cannot be, the law. But this notion seemed to infect the conflicting conclusions that (a) Pascagoula was not guilty of laches but that (b) the maritime lien lost priority because of delay.[2]

---

1. For example, in the Court's oral opinion, he stated:

    "Now, then, with reference to the knowledge of the bank that there were any prior liens on this vessel, the record shows rather slenderly, but nevertheless requires a finding that the bank had no notice of any prior liens. Likewise, it is equally certain from the testimony that [Pascagoula] had no actual knowledge of the existence of the mortgage, * * *. So, where none of the parties have actual knowledge of it, then the law steps in and interprets and declares what the rights of the respective parties are. And the rights are that, if there is a preferred mortgage on the

    vessel, it must prevail. If there was a lien on the vessel prior to the time that mortgage was given and known to the bank or the mortgagee, then certainly the mortgage would not supersede the priority of that lien; but in this case the evidence fails to show that the bank had any constructive knowledge or actual knowledge of any prior liens. So I think under the testimony here I am compelled to hold that the mortgage is good and has the priority."

2. Following the discussion in note 1, supra, the Court's oral opinion continued.

    "Now, with reference to laches, I do not think that [Pascagoula has] been guilty

The Bank with persuasive earnestness justifies the result on the ground that despite the Judge's disclaimer, repeated not less than three times, the findings were the equivalent of laches. And in anticipation of the almost certain reaction that we would be reluctant to rest affirmance on an implied finding of laches which the Judge expressly negated, the Bank asserts that here the result would be eminently fair. That is based on the further assertion that operation of the ancient Mississippi Maritime Lien Statute,[3] with its internal 6-months' limitation period, invokes the usual rule on laches

analogous to state limitations to thus impose on the dilatory one the burden of establishing a reasonable excuse and disproving harm to the other.

We cannot do this as it assumes the very point in question: Did the Judge mean delay only or laches as that term is ordinarily understood? The legal consequences in terms of actual priority or subordination of maritime lien versus preferred mortgage turn on this fact-legal conclusion.

Some consequences are clear. For instance, if on the remand which we order

of any laches. According to Mr. Dees, the custom over there is, in certain circumstances when a fellow is rather hard-pushed and comes in to make payment on indebtedness and says he has had a hard month this month, the custom is not to push him too much and to give him the opportunity to pay it out if he can. While, of course, a lien necessarily may lose some of its rights when he does that, nevertheless, in this case I hold there was no laches and that they do have a lien upon the vessel, but it is secondary to that of the bank.

\* \* \*

"At this time, however, I am unable to see where the fact that there were approximately $1,200.00 furnished by [Pascagoula] to the boat prior to the date of the execution of the mortgage gives that priority over the mortgage of the bank, in view of the delay in asserting his claim and in view of the fact that the bank had no actual knowledge of the lien. \* \* \*."

**3.** Section 340. Watercraft.
"There shall be a lien on all ships, steamboats and other water craft for work done or materials supplied by any person in this state for or concerning the building, repairing, fitting, furnishing, supplying or victualing such ships, steamboats or other water craft, and for the wages of the persons employed on board such vessel, boat, or craft, for work done or services rendered, in preference to all other debts due and owing from the owners thereof. The said lien shall expire six months after the claim is due, unless judicial proceedings have been commenced to assert it." Miss.Code § 340 (1942); Miss.Codes 1880, § 1395; 1892, § 2725; 1906, § 3085; Hemingway's 1917, §§ 2445, 2447; 1930, § 2242.

The "judicial proceedings" required within 6 months by this section are defined in Sections 341–352. Section 352 expressly provides for the sale of a boat or water craft, and that at the sale the "purchaser shall acquire the same free from all prior encumbrances saving the rights of those having current liens under this chapter." Any effort on the part of the State of Mississippi to provide this *in rem* remedy would be constitutionally ineffectual. See Gilmore & Black, Admiralty §§ 1–13, 9–24 to 9–29 (1957); The Moses Taylor, 1867, 4 Wall. 411, 71 U.S. 411, 18 L.Ed. 397; The Hine v. Trevor, 1867, 4 Wall. 555, 71 U.S. 555, 18 L.Ed. 451; Madruga v. Superior Court, 1954, 346 U.S. 556, 74 S.Ct. 298, 98 L.Ed. 290. While it is true that under the pre-1920 law a libel *in rem* in admiralty could have been filed on the basis of the Mississippi statute, there may be some question whether, in view of the supersession provision of the Act, 46 U.S.C.A. § 975, the rules concerning laches on the face of the libel or complaint stated in Morales v. Moore-McCormack Lines, Inc., 5 Cir., 1953, 208 F.2d 218, would apply to bar a libel filed after 6 months, so that "prejudice to the respondent is presumed until the contrary is made to appear; that it is incumbent on the libelant to show facts excusing the delay; and that the libelant has the burden of rebutting the presumption of prejudice." 208 F.2d 218, 221. Especially might that be so in the light of the opinion in McDaniel v. Gulf and South American Steamship Co., 5 Cir., 1955, 228 F.2d 189, in which Morales was held not to apply and was characterized as "an exceptional case." 228 F.2d 189, 192, and see especially notes 2 and 3 and related text. But we do not decide this or intimate in any way what the ultimate decision should be.

the Judge adheres to his conclusion that there was *delay* but no laches, then the decree to be entered must be in favor of the maritime lien ($1,282.12) as superior to the mortgage. Section 953(b), (46 U.S.C.A. § 953) expressly accords priority to "preferred maritime liens" which this would then be since it would be unaffected by laches (46 U.S.C.A. § 974(2)) found not to exist.

Consequently, as to the matters involved in Part II, the cause must be remanded for further and not inconsistent proceedings. The scope and nature of those proceedings must of necessity be left in the first instance to the considered judgment and discretion of the District Judge. He can best determine initially the extent to which the present record is to be supplemented by further evidence, hearings, etc.

Affirmed in part and reversed and remanded in part.