**CARR OIL COMPANY, Inc., Plaintiff,**

v.

**The STEEL VESSEL, OFFSHORE SALVOR, her engines, tackle, apparel, etc., Defendant.**

**Civ. A. No. 67–1085.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 29, 1968.

John D. Lambert, Jr., New Orleans, La., for plaintiff.

James J. Morrison, New Orleans, La., for Ocean Marine, Inc.

**522**

CASSIBRY, District Judge:

This is a libel by Carr Oil Company, Inc., *in rem* against the M/V OFF-SHORE SALVOR asserting a maritime lien for supplies furnished the vessel during the period April 22, 1964 through March 26, 1965, while the vessel was owned by Eltra Corporation and under bareboat charter to Offshore Salvage Corporation, a subsidiary of Offshore Research and Development Corporation. The libel was originally brought in the United States District Court for the Eastern District of Texas, Beaumont Division, from whence it was transferred by stipulation to this District. The vessel was claimed by Ocean Marine, Inc., purchaser of the vessel from Eltra Corporation on March 18, 1966 almost a year after the supplies were furnished, whose principal defense, based on 46 U.S.C.A. § 973, is that the charter-party under which the vessel was operating at the time the supplies were furnished prohibited the Master from incurring liens on the vessel for supplies, and that the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of the charter-party, the Master was without authority to bind the vessel therefor.

### FINDINGS OF FACT

**1.**

Fuels and supplies were furnished by libelant to the M/V OFFSHORE SALVOR between April 22, 1964 and March 26, 1965, of a value of $3,434.43, for which either Offshore Salvage Corporation or Offshore Research and Development Corporation was invoiced, and which are unpaid.

**2.**

At the time such fuels and supplies were furnished, the M/V OFFSHORE SALVOR was operating under a written bareboat charter-party purchase agreement from her owner, Eltra Corporation, to Offshore Salvage Corporation, pursuant to the express terms of which:

"7. *Charterer to Man, etc.*

Charterer shall, at its own expense and by its own procurement, man, victual, navigate, operate, fuel and supply the vessel, keep her fully insured, and repair and maintain her as required to comply with Charterer's obligations under this charter, and pay all other charges and expenses of every kind and nature whatsoever incidental to the use and operation of the vessel under this charter, including insurance premiums. Charterer, and not the Owner, shall have the exclusive possession, control and command of the vessel.

\*　\*　\*　\*　\*　\*

14. *Liens.*

(a). Neither Charterer, the Master of the Vessel, nor any other person shall have any right, power or authority to create, incur or permit to be placed upon the vessel any lien whatsoever \* \* \*

Charterer agrees to carry a properly certified copy of the charter with the ship's papers and, on demand, to exhibit the same to any person having business with the vessel which might give rights to any lien thereon, other than liens for crew's wages and salvage. Charterer agrees to notify any person furnishing repairs, supplies, towage or any other necessary services to the vessel that neither the Charterer nor the Master has any right to create, incur or permit to be imposed upon the vessel any liens whatsoever except for crew's wages and salvage.

Charterer agrees to fasten to the vessel, in a conspicuous place, and to maintain a printed notice, reading:

'This vessel is the property of ELTRA CORPORATION. It is under bareboat charter to Offshore Salvage Corporation, and by the terms of the bareboat charter, neither the

Charterer, Master, nor any person other than Owner, has any right, power, or authority to create, incur or permit to be imposed upon this vessel, its freights or charter hire, any liens whatsoever, except the mortgage referred to in section 14 of the bareboat charter party and for salvage.'

This charter party is hereby expressly made subject and subordinate to the above mentioned mortgage."

### 3.

The charter-party requires the posting of notices of the above provision in the wheelhouse and in other conspicuous places on the vessel; and the evidence establishes that such notices were so posted. While libelant introduced testimony from its employees who had delivered the fuel and supplies to the vessel, and from Mr. Carr, the President of libelant, Carr Oil Company, Inc., that they did not see such notices on the few occasions when they were on the vessel, all admitted that they did not look for any such notices, nor did they make any inquiry from the Master or any of the vessel's personnel respecting the authority of the Master or anyone else to bind the vessel for such fuel and supplies. Libelant does not claim to have been misled by the Master, or anyone else, and their negative testimony that they failed to see something they were not looking for cannot prevail over the positive testimony introduced by Claimant of the presence of the notices posted aboard the vessel. The Court therefore finds from the evidence that the notices of the lack of authority of the Charterer and the Master of the M/V OFFSHORE SALVOR to incur liens on the credit of the vessel were duly posted on the M/V OFFSHORE SALVOR at all material times when the supplies were ordered and delivered, as required by the charter-purchase agreement.

### 4.

Mr. Tom Carr is President of libelant Carr Oil Company, Inc., and was at all material times its active chief executive officer who personally handled this particular account. Mr. Carr was also at all material times, and at the same time, a stockholder, director, and active Vice-President of Offshore Salvage Corporation, Charterer of the M/V OFFSHORE SALVOR, and its parent corporation, Offshore Research and Development Corporation, in charge of promoting jobs for the M/V OFFSHORE SALVOR. While he admits being fully aware of an indebtedness by the two Offshore corporations to Eltra Corporation in the neighborhood of a quarter million dollars repayable in monthly installments in the amount of the charter-hire, he professes ignorance of the sale of the M/V OFFSHORE SALVOR to Eltra as security for such indebtedness and her repurchase under the bareboat charter-party purchase agreement by the Offshore corporations, even though such a transaction required the authority of the Boards of Directors of both Offshore corporations of which he was a member. *Albeit*, the record is nevertheless clear that as an officer and director of said corporations he had full access to all of the records, papers and documents thereof as well as to all personnel of both corporations, including the Master of the M/V OFFSHORE SALVOR, and at all times had the full means, ability, and authority to ascertain the full facts of the ownership of the vessel his Carr Oil Company was fueling and supplying, and the lack of any authority of the Master or Charterers to incur any liens on the credit of said vessel.

### 5.

Libelant, Carr Oil Company, Inc., was not reasonably diligent in ascertaining whether the Master of the M/V OFFSHORE SALVOR, who ordered the supplies in question, had authority to bind the vessel therefor.

### 6.

While Ocean Marine Corporation, claimant herein, purchased the M/V OFFSHORE SALVOR without warran-

524

ty against liens, the purchase was made on March 18, 1966, almost two years after the date of the first invoice sued on herein, and almost one year after the last invoice. There is no suggestion in the record that Ocean Marine knew, was a party to, or had any reason to suspect libelant's claim of a lien. Libelant's inordinate delay in filing this libel is unexplained, although it appears from the record that the Offshore Corporations responsible for payment of the supplies here sued for had been out of business for some considerable time prior to the institution of this libel.

## CONCLUSIONS OF LAW

### 1.

This Court has jurisdiction of this case pursuant to the Admiralty and Maritime Clause of the United States Constitution and the Maritime Lien Act, 46 U.S.C.A. § 971 et seq.

### 2.

The Maritime Lien Act, 46 U.S.C.A. § 973, specifically provides

"* * * nothing in this chapter shall be construed to confer a lien when the furnisher knew, *or by exercise of reasonable diligence could have ascertained,* that because of the terms of a charter party, agreement for sale of the vessel * * * the person ordering the * * * supplies * * * was without authority to bind the vessel therefor."

### 3.

■ There is abundant authority holding that a marine supplier is under the affirmative duty to inquire and investigate as to the existence of a charter and its terms; that the presumption of authority in the Master to incur liens disappears where the supplier fails to exercise due diligence to determine whether or not such authority exists; that a supplier is chargeable with notice of the existence of the charter and of its

restrictions, if he could have ascertained either by reasonable investigation, and that a mistaken belief to the contrary is unavailing. United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361; The Sylvan Glen, D. C., 241 F. 731; The Western Wave, 77 F.2d 695 (5th Cir.) cert. den. Board of Commissioners of Port of New Orleans v. North American Fruit S. S. Corp., 296 U.S. 633, 56 S.Ct. 156, 80 L.Ed. 450; American Marine Corp. v. Towboat Z–Fourteen, D.C., 214 F.Supp. 849, affirmed 316 F.2d 238 (5th Cir.); Pascagoula Dock Station v. Merchants & Marine Bank, 271 F.2d 53 (5th Cir.); Walsh Stevedoring Co. v. M/S Slagen, 361 F.2d 478 (5th Cir.); Bimini Run, Ltd. v. Belcher Oil Co., 336 F.2d 184 (5th Cir.).

### 4.

■ As a matter of law, libelant at least failed to exercise the reasonable diligence required of it to satisfy the requirements of 46 U.S.C.A. § 973, if indeed knowledge of the charter-party purchase agreement and the provisions thereof are not imputable to Mr. Carr, libelant's president, and through him to libelant, by virtue of his position as a stockholder and an active officer and director of the charterer of the vessel. See The Cimbria, D.C., 214 F. 131.

### 5.

In view of the foregoing holding of this Court that no maritime lien was created under the circumstances of this case, it becomes unnecessary to pass upon any other defenses.

### 6.

■ It was stipulated that claimant, by virtue of the seizure of the vessel while on charter to Golden Lane Drilling Co., was required to bond the vessel out at an expense of $80.00, which amount claimant is entitled to recover from libelant, with interest, from the date of judgment.

Let judgment be entered accordingly.