Floro Herrera MEDINA (Master), Sergio Aros, et al., Plaintiffs, Appellees,

v.

MARVIRAZON COMPANIA NAVIERA, S.A., et al., Defendants, Appellees.

Doctor Elias J. Tsavaris, Plaintiff, Intervenor Appellant.

No. 82–1530.

United States Court of Appeals, First Circuit.

Submitted Jan. 7, 1983.

Decided June 13, 1983.

Richard H. Wilson, and Wilson & Kenny, Boston, Mass., on brief, for plaintiff, intervenor appellant.

Michael F. Kuppens, and Kneeland, Kydd & Handy, Boston, Mass., on brief, for appellees Gulf Water Shipping Co., Inc., All Ships Supply, Inc., Hellas Ships Supply Co., Inc., Strachan Shipping Co., Boland Marine & Mfg. Co., Inc., Atlantic & Gulf Stevedoring, Inc., Dixie Mach. Welding & Metal Works, Inc., New Star Ship Supply Co., Inc., and Weber Marine, Inc.

James F. McHugh, S. Elaine McChesney, and Bingham, Dana & Gould, Boston, Mass., on brief, for appellee Nat. Sugar Refining Co.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

PER CURIAM.

The only issue in this case is whether the master was clearly erroneous in finding that appellant, Dr. Tsavaris, was not entitled to a seaman's wage lien against the vessel, M/V Constantinos. The district court, 533 F.Supp. 1279, affirmed the master's finding, as do we.

■ The law in this area is well-settled. Generally speaking, one who advances funds used to discharge seamen's wage liens is subrogated to the lienors' rights. *Sasportes v. M/V Sol de Copacabana,* 581 F.2d 1204, 1207 (5th Cir.1978); G. Gilmore & C Black, The Law of Admiralty §§ 9–20, 9–21 (2d ed. 1975); 2 Benedict on Admiralty, §§ 32, 33 (7th ed. 1982). Exceptions are that owners, general agents, and, in limited circumstances, shareholders or officers of a corporate owner have been denied liens. *See The Gloucester,* 285 F. 579, 582 (D.Mass.1923). Owners are denied liens as it is inequitable for those who are primarily liable for a debt to be reimbursed to the detriment of other lienholders out of the vessel's proceeds. Corporate officers, general managers, and others are denied liens when they have considerable authority over the vessel such that they are in a similar position to the owner and there would be "insuperable legal difficulties in the enforcement of [the lien], or because—on the grounds similar to estoppel—to recognize it would be inequitable to other claimants." *Id.* at 582.

■ The factual question is whether appellant, who advanced $51,844.40 that was used to pay the wages of the crew, occupied such a close relationship to the vessel and its owners and exercised sufficient control over the ship that it would be inequitable to grant him a lien. The record here supports the district court's conclusion that it would be. Appellant had been friendly for some years with Robert Fearon who, along with Peter Patten, controlled the corporations that owned and managed the vessel. Prior to advancing the $51,884.40, appellant had at the request of Fearon and Patten, advanced them $15,000 because they were having difficulties meeting crew payments. As with the $51,884.40, appellant received no acknowledgment of payment, outside of his cancelled check. Appellant testified that the $51,000 was his own money and money that he had borrowed from another doctor. According to appellant, the money was going into a medical foundation and at the time "it was sitting around waiting to be used." No explanation was offered by appellant as to why a promissory note or other acknowledgment of payment was not obtained from Fearon and Patten or the corporations they controlled that owned and managed the vessel. It is difficult to determine from the record whether the money advanced was a loan to a friend or an investment in a shipping venture.

The other record facts are not any more illuminating. The ship's log could be interpreted to describe appellant as "owner." He signed documents which identified him as president of the Constantinos Shipping Corporation, corporate owner of the vessel. Appellant testified that he signed the documents only to get the ship moving; that "the only possibility that I had to get my money returned was to insure that the ship was working." An affidavit from the other doctor who had put up part of the money reads in part, "I was aware that Dr. Tsa-

varis, *although a vice-president of Constantinos Corporation* was not a director or stockholder, nor was he involved in management or directing business affairs in either corporation." (Emphasis added.) The other corporation referred to was Fernavae Corp., managing agent for the ship owner.

Based on these facts, we cannot say that the master committed clear error in denying appellant a lien for payment of seamen's wages. Certainly there is not "a very obvious and exceptional showing of error." *Graver Mfg. Co. v. Linde Co.,* 336 U.S. 271, 275, 69 S.Ct. 535, 537, 93 L.Ed. 672 (1949). There was evidence from which it could be found that appellant "was either (1) a real part owner of her [the vessel] or (2) occupied a fiduciary relation towards her and her owners, or (3) dealt with himself on her account.... [and] to recognize it [the lien] would be inequitable to other claimants." *The Gloucester,* 285 F. at 582.

*Affirmed.*