**JOHN W. STONE OIL DISTRIBUTOR, INC., Plaintiff-Appellant,**

v.

**The M/V MR. W. BRUCE, etc., Defendant,**

v.

**FIRST NATIONAL BANK OF JEFFERSON PARISH and George Engine Company, Inc., Intervenors-Appellees.**

No. 83–3642.

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1985.

---

George J. Fowler, III, Thomas H. Kingsmill, III, New Orleans, La., for plaintiff-appellant.

Gerald F. Slattery, Jr., Cathy E. Chessin, New Orleans, La., for 1st Natl.

George V. Baus, Brian J. Rodan, Clare E. Peragine, New Orleans, La., for George Engine.

Before GEE, WILLIAMS and JOLLY, Circuit Judges.

GEE, Circuit Judge:

John W. Stone Oil Distributor, Inc. (Stone Oil) brought this admiralty suit in rem against the M/V MR. W. BRUCE to assert a maritime lien. The First National Bank of Jefferson Parish (FNJ) and the George Engine Co., Inc. (GECO) intervened to protect their interests as holders of preferred maritime mortgages covering the MR. W. BRUCE. The district court ordered the MR. W. BRUCE to be sold and apportioned the proceeds of the sale among Stone Oil, FNJ, and GECO. The court later reversed itself, however, and held that apportionment was inappropriate. The court therefore ordered that the proceeds be divided between FNJ and GECO. We affirm.

I.

The parties stipulated to the facts of this case. The intervenor-appellee FNJ holds two separate maritime mortgages, one on the MR. W. BRUCE and one on the MR. PETE. These two mortgages secure a promissory note dated December 8, 1975, for $180,000 executed by John R. Bordlee Contractors, Inc. (Bordlee Contractors). Bordlee Contractors defaulted on the note, and the amount due on the note is $19,415.27 plus interest, costs, and attorneys' fees.

The intervenor-appellant GECO holds two preferred maritime mortgages on the MR. W. BRUCE and one preferred maritime mortgage on the MR. PETE. One mortgage on the MR. W. BRUCE secures a promissory note dated December 3, 1976,

for $152,760 executed by Bordlee Contractors. Bordlee Contractors defaulted on this note, and as of January 12, 1983, the amount due on the note was $10,295.82 plus interest, costs, and attorneys' fees. The second mortgage on the MR. W. BRUCE and the mortgage on the MR. PETE secure a promissory note dated March 7, 1980, for $44,145.43. Bordlee Contractors defaulted on this note, and as of January 12, 1983, the amount due on the note was $60,062.14 plus interest, costs, and attorneys' fees.

After these mortgages were executed, the appellant Stone Oil sold and delivered fuel, oil, and other products to the MR. W. BRUCE in the total amount of $38,100.07. Stone Oil has not received any payment from the MR. W. BRUCE on this account. This debt constitutes a maritime lien on the vessel subordinate to the preferred ship mortgages held by FNJ and GECO.

To assert its lien rights, Stone Oil filed an admiralty complaint in rem against the MR. W. BRUCE, alleging breach of maritime contract. After the complaint was filed, the U.S. Marshal seized the vessel and sold it for $115,000. The Marshal deposited the proceeds with the district court registry. FNJ and GECO then intervened in the proceedings to protect their claims against the vessel.

The parties stipulated that Stone Oil's claim ranked below FNJ's and GECO's. The district court confirmed the parties' ranking and held a hearing to determine whether § 30, subsec. D(f) of the Ship Mortgage Act, 46 U.S.C. § 922(f) required apportionment of the preferred mortgage claims. The court held that § 922(f) applied to the case and that FNJ's and GECO's claims on the MR. W. BRUCE should be apportioned under the terms of § 922(f). On FNJ's and GECO's motions for reconsideration, however, the district

court reversed itself and held that § 922(f) did not apply to the case. The court further held that a marshalling of assets to permit Stone Oil to obtain partial recovery on its claim would be inappropriate because such a result could operate to the detriment of third parties not before the court. The court therefore held that FNJ and GECO should be paid the entire amount of their claims. Stone Oil appeals from this holding.

## II.

■ We first consider whether § 30, subsec. D(f) of the Ship Mortgage Act applies to this case. 46 U.S.C. § 922(f)[1] applies to "fleet mortgages," requiring apportionment when one preferred mortgage includes more than one vessel without providing for the separate discharge of each vessel. Because FNJ and GECO have separate and independent mortgages on the MR. W. BRUCE and the MR. PETE, § 922(f)'s apportionment requirement, by its terms, does not apply to this case. Stone Oil agrees with this analysis but argues that apportionment would be appropriate under the facts of this case. More particularly, Stone Oil urges us to read § 922(f) broadly and find the statute applicable whenever several maritime properties are pledged to secure a single indebtedness. Unless we look to the substance of the transaction over its form in this way, Stone Oil contends, maritime financiers will be able to avoid § 922(f)'s apportionment requirement in transactions involving multiple vessels pledged to secure a single indebtedness simply by drafting separate mortgages to cover each vessel pledged rather than drafting a single fleet mortgage.

Although Stone Oil's argument and interpretation of § 922(f) have some merit, § 922(f)'s unambiguous language regarding the section's applicability requires us to

---

1. Section 922(f) provides in pertinent part:

If a preferred mortgage includes more than one vessel and ... [does not provide] for the separate discharge of [each vessel by the payment of a portion of the mortgage indebtedness] ... and the vessel is to be sold upon the order of a district court in a suit in rem in admiralty, the court shall determine the por-

tion of the mortgage indebtedness increased by 20 per centum (1) which, in the opinion of the court, the approximate value of the vessel bears to the approximate value of all the vessels covered by the mortgage, and (2) upon the payment of which the vessel shall be discharged from the mortgage.

decline the invitation to extend § 922(f)'s coverage. The first sentence of § 922(f) defines the statute's scope by stating "[i]f a preferred mortgage includes more than one vessel...." Moreover, we have recognized that § 922(f) does not impliedly forbid separate and distinct preferred mortgages on several vessels as security for a single debt. *Pascagoula Dock Station v. Merchants & Marine Bank*, 271 F.2d 53, 55 (5th Cir.1959). As we stated in *Pascagoula:*

> The purpose behind Section 922(e) and (f) is to make certain that where several properties are covered in a *single* mortgage that the special statutory mortgage lien shall or may be released as to any one property on the payment of a specified or ascertainable sum. Where the mortgage covers but a single vessel, there is no need to apportion as between it and nonmaritime property or other vessels. In such cases the documents of the particular vessels concerned will reflect that she is subject to a full preferred ship mortgage lien to the extent of the debt, whatever it might be.

*Id.* (citations omitted). In view of the statutory language and this judicial interpretation, we conclude that § 922(f) does not apply to maritime mortgages covering a single vessel.

### III.

In the alternative, Stone Oil argues that even if § 922(f) does not require apportionment, the district court abused its discretion by refusing to order an apportionment based on the equitable doctrine of marshalling of assets. We disagree. A junior lienholder such as Stone Oil may invoke the marshalling of assets doctrine

---

2. Stone Oil contends that if apportionment were ordered and GECO partially satisfied its claim from proceeds of the sale of the MR. PETE, the junior lienholders of the MR. PETE would suffer no prejudice because their interests in the MR. PETE have been inferior to GECO's since those interests were created. Stone Oil contends that failing to apportion the senior lienholders' claims with its claim will result in a windfall for the junior lienholders of the MR. PETE. We disagree. If we conclude that § 922(f) does not require apportionment and that apportionment is not required by equitable

only if it will not operate to the detriment of other creditors. *See In re St. Cloud Tool & Die Co.*, 533 F.2d 387 (8th Cir.1976). In this case, the district court initially ordered apportionment, but reversed itself after discovering that the apportionment could prejudice the interests of junior lienholders of the MR. PETE who were not before the court by forcing GECO to look to the MR. PETE as well as to the MR. W. BRUCE for satisfaction of its claim.[2] Although the record does not contain the names of the junior lienholders of the MR. PETE nor the nature or amount of their claims against that vessel, we cannot say that the district court abused its discretion in refusing to order the equitable remedy of marshalling assets. The judgment of the district court must therefore be

AFFIRMED.

---

concerns, the junior lienholders of the MR. PETE do not thereby gain a windfall, for we extinguish no security interest superior to theirs in the MR. PETE. By contrast, apportionment could prejudice the junior lienholders' interests, as the district court recognized, by forcing GECO to claim a portion of the proceeds of the sale of the MR. PETE it otherwise would not be required to claim. Because apportionment by marshalling assets could operate to the detriment of creditors not before the court, this equitable remedy is inappropriate here.