## THE CITY OF SEATTLE.

### No. 62.

Circuit Court of Appeals, Second Circuit.

Nov. 21, 1932.

Courtland Palmer, of New York City, for appellant.

Raymond E. Stefferson, of New York City (Harold V. Williams, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

On March 20, 1926, the Morse Dry Dock & Repair Company tendered its bid to make repairs and alterations on the steamship City of Seattle in accordance with specifications which had been submitted to various shipyards at the instigation of Mr. C. L. Dimon. The owner of the vessel was Miami Steamship Company, and Mr. Dimon's relation to this corporation does not clearly appear, but it is assumed by both sides that he acted with the owner's authorization. The Morse Company's bid was accepted, although no formal acceptance appears in the record, and the vessel was delivered to the libelant's yard. On August 30, 1926, Mr. Morse on behalf of the libelant wrote to Mr. Dimon as follows:

"Referring to my letter of August 19th [not printed in the record], regarding payments for the reconditioning of the S. S. 'City of Seattle,' our understanding is that the notes be either signed by you or if the

'City of Seattle' is to be operated by a company, you will endorse the notes personally.

"Will you kindly confirm this, and oblige." Subsequently Mr. Dimon gave his personal notes as hereinafter stated.

During the progress of the work covered by the appellant's bid, extra items of repairs not called for by the original specifications were ordered by Mr. Dixon, who was acting as superintendent of the job for Mr. Dimon. These orders were confirmed by twenty-five letters addressed to Mr. Dimon by the libelant, describing the extras and quoting the prices therefor, which aggregate about $11,000. The extra repairs were done concurrently with the work described in the original specifications and the whole was finished, with the exception of certain items which the libelant contends were waived by Mr. Dimon, about December, 1926. A bill dated December 31, 1926, and addressed to "S. S. City of Seattle & Owners—C. L. Dimon," was presented to Mr. Dimon. This bill mentioned only work covered by the original specifications and showed a balance due of $75,998. For this sum Mr. Dimon gave his personal notes dated January 19, 1927. No bill was ever presented to Mr. Dimon or to the owners of the steamship for the $11,000 of extras. It is to collect the price of these extra repairs that the present libel was filed on November 26, 1930.

The libelant concedes that the agreement to accept Mr. Dimon's personal notes without any reservation of a lien upon the vessel was a waiver of its lien with respect to the work done under the original contract formed by the acceptance of its bid, but it contends that the extra repairs were not performed under the original contract, but under separate and independent contracts made with the owner through its representative, Mr. Dimon, and as to these contracts there has been no waiver of lien. The appellee not only disputes this contention, but also asserts defenses of accord and satisfaction and of laches. The latter is based on the fact that for nearly four years after completion of the work sued for the libelant took no action whatever, and such delay has resulted in the loss of two material witnesses; Mr. Dimon having died in April, 1929, and Mr. Morse in August, 1930. The defense of accord and satisfaction is based on the testimony of Mr. Cregin, who was employed by Mr. Dimon as auditor, and says he was present during part of an interview between Mr. Morse and Mr. Dimon, on January 17, 1927. He testified that Mr. Morse asked for notes covering the balance due for work on the City of Seattle, including the extras on the job; that Mr. Dimon objected to the way the work had been done and to the delay in completing it, the original contract having required completion in seventy days and having provided a penalty of $500 per day for delay, and offered the notes he gave in full settlement; and that Mr. Morse accepted the offer and said "we will forget the extras." The District Court made no finding as to either of these defenses, but dismissed the libel on the ground that the lien for extras had been waived.

We shall make a similar disposition of the case. We cannot, however, refrain from remarking that the fact that no bill was ever sent for these extras, although in 1929 Dimon was billed for several other vessels, is a highly persuasive circumstance in support of Mr. Cregin's testimony. The explanation that it was not the practice to send out bills while a job was unfinished and that this job was so considered because the City of Seattle was still in the libelant's yard, does not seem very satisfactory. However, we prefer to rest decision upon another ground.

From the above-quoted letter of August 30, 1926, it is clear that "payments for the reconditioning" of the vessel were to be assumed by Dimon. No extras had as yet been agreed upon. The letters confirming Dixon's orders of extras began on September 1st, and Dimon agreed to them all as they were done. Moreover, the letter of October 11th (the only one of the twenty-five letters confirming orders that is printed in the record) states that "Every effort will be made to complete the above mentioned work within the time specified in the main contract. Should delay be made in awarding this work, an extension of time will be requested." The extras were certainly part of "the reconditioning." The only tenable interpretation of the dealings between the parties and of their correspondence is that Dimon was to assume responsibility for all the reconditioning. His credit rather than the credit of the vessel was relied upon by the libelant to secure "payments for the reconditioning." Under the doctrine of Marshall & Co. v. The Pres. Arthur, 279 U. S. 564, 49 S. Ct. 420, 73 L. Ed. 846, the lien was waived. Accordingly the decree is affirmed.