## THE PRESIDENT ARTHUR. *

### No. 426.

Circuit Court of Appeals, Second Circuit.

July 23, 1934.

*Writ of certiorari denied 55 S. Ct. 149, 79 L. Ed. ——.

Courtland Palmer, of New York City (Chauncey I. Clark and Burton H. White, both of New York City, of counsel), for appellant.

Saul S. Myers, of New York City (Cletus Keating, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

In July, 1925, the libelant filed its libel in rem against the steamship President Arthur to establish a maritime lien for materials and labor expended in repairing and reconditioning the vessel. The cause was referred to a commissioner who reported that the libelant was entitled to a lien in the sum of $132,539.44. On exceptions to his report, the District Court found that the work had been performed under written contracts which provided for payment partly in cash and partly in the claimant's negotiable promissory notes indorsed by a third party, and held that for so much of the work as was to be paid for by indorsed notes no lien existed. This resulted in entry of a decree for the libelant in the sum of $3,880, with interest from March 11, 1925. The decree was entered on April 5, 1930, and the libelant forthwith appealed, but did not file in this court the record on appeal until May 3, 1934.

Before proceeding to the merits of the controversy a jurisdictional question must be considered. The appellee contends that the decree was a joint decree against the vessel, her claimant, and her stipulators for value, and, since no citation or notice of appeal was served on the stipulators and it is now too late to do so, the appeal must be dismissed. The authorities relied upon are Hartford Accident Co. v. Bunn, 285 U. S. 169, 52 S. Ct. 354, 76 L. Ed. 685; Elliot v. Lombard, 54 S. Ct. 637, 78 L. Ed. 1175; Jacobs v. George, 150 U. S. 415, 14 S. Ct. 159, 37 L. Ed. 1127; Dolan v. Jennings, 139 U. S. 385, 11 S. Ct. 584, 35 L. Ed. 217. In the case at bar the decree adjudged that "the libellant * * * recover of and from the S. S. President Arthur, her claimant American Palestine Line, Inc., and her stipulators for costs and value, or her proceeds of sale, the sum of $3,880 * * * and that said libellant have judgment and execution therefor in accordance with the rules and practices of this Court." While in form the decree is not like that discussed in. The Carso, 69 F. (2d) 824 (C. C. A. 2), in effect it is the same because of the final clause that the libelant have judgment and execution "in accordance with the rules and practices of the court." Under the practice prevailing in this circuit, execution does not issue against the stipulators until they have been heard on an order to show cause and such objections as they may make have been overruled. The Lydia, 1 F. (2d) 18, 21 (C. C. A. 2); The Carso, supra. That the decree is to be read in the light of the admiralty rules and practice is recognized in Elliot v. Lombard, supra. See, also, The L. I. R. R. No. 18, 67 F. (2d) 290 (C. C. A. 2). So read, it was not a joint decree within the meaning of the rule applied in the Bunn Case. The contention that this court is without jurisdiction of the appeal is overruled.

On November 14, 1924, the libelant and the owner of the vessel entered into a written contract by the terms of which the libelant was to do certain specified repair work for the agreed price of $73,440. The contract also enumerated certain items of equipment which were to be furnished and installed at specified unit prices, and another provision stipulated that the repairman was to do whatever additional work was necessary in the opinion of the owner's marine architects and engineers to enable him to obtain for the vessel classification and steamboat inspection certificates; such additional work to be performed at prices acceptable to the owner's architects and engineers or else to be settled by arbitration. It was also provided:

"The amounts earned by the Contractor hereunder shall be payable as follows: Twenty thousand Dollars ($20,000) on December 8, 1924, and upon the completion of the work provided for herein the further sum of Twenty thousand Dollars ($20,000), together with the promissory note of the Owner for the balance due the Contractor hereunder, which note shall be duly endorsed by Jacob Wacht and payable one hundred and twenty (120) days from the date said work is completed.

"The Owner covenants and agrees that it will not on or before January 5, 1925, place any mortgage upon said vessel."

The work covered by the contract was expected to be completed by January 2, 1925, but repairs to the vessel were not actually finished until early in March. By letter of December 20, 1924, the libelant was assured that no mortgage was contemplated at any time.

On January 16, 1925, a supplemental agreement was made and confirmed by the libelant's letter of that date. This covered the alterations and reconditioning of the passenger accommodations, and was to be performed at cost plus 50 per cent. to cover overhead and profit. Payment was to be made "fifty per cent. (50%) in cash upon completion of the work, the remaining fifty per cent. (50%) to be covered by a four months note of your Company, personally endorsed by Mr. Jacob Wacht."

In March, 1925, on the eve of the first scheduled sailing of the vessel, the libelant claimed $217,701.83 for the work done by it, plus a towage claim of $1,200, which was waived in settlement. Of this amount $60,-000 had already been paid in cash. A dispute arose as to how much additional cash the libelant was entitled to be paid and how much in notes, and the libelant threatened to libel the ship if its terms were not met. On March 11th a settlement was arrived at by which the libelant received $25,000 in cash and the claimant's four months' note for $125,000, indorsed by Jacob Wacht, accompanied by a letter from the claimant to the effect that the note might be accepted "without waiving any of your rights and liens, if any." Bills for $7,539.44 were left for future adjustment, and an item for $162.39 was waived. The bills left open for adjustment were found by the District Court to aggregate $7,759.99, and for the one-half thereof payable in cash the decree awarded a lien. The note for $125,000 was not paid at maturity and was protested against the indorser, who later became bankrupt. It was proved against his estate, but nothing has ever been collected upon it.

The libelant contends (1) that a large part of its work was not covered by the above-mentioned written contracts (a matter to be discussed later); and (2) that in any event those contracts did not waive the right to a lien conferred by the Ship Mortgage Act of 1920, § 30, subsec. P (46 USCA § 971). The second contention cannot be maintained. By expressly contracting for the security of indorsed notes, without stipulating for retention of a maritime lien, the libelant waived the lien it would otherwise have had as to so much of its work as was to be paid for by notes. We agree with the court below that the case is ruled as to this issue by Marshall & Co. v. The President Arthur, 279 U. S. 564, 49 S. Ct. 420, 73 L. Ed. 846, and Taylor v. The Commonwealth, 23 Fed. Cas. 756, No. 13,787 (C. C. E. D. Mo.). See also City of Seattle, 61 F.(2d) 763 (C. C. A. 2). The claimant's letter authorizing acceptance of the note without prejudice to the libelant's lien, "if any," merely left the question to depend upon the parties' previous agreements. Since the lien was waived when the contracts were made, there was none which the letter could preserve. It is urged that the clause inserted in the contract of November 14th by which the owner agreed to place no mortgage on the vessel before January 5, 1925, shows an intention to rely upon the credit of the vessel. But by its terms this clause was limited to a date immediately subsequent to the time when payment by cash and notes as agreed under the contract would have occurred. It does not indicate that the libelant intended to look to the vessel as security for anything more than the sums to be paid in cash; as to the payment to be made in notes, it had bargained for other security. Similar considerations are applicable to the letter of December 20, 1924.

It is further urged that parol evidence of negotiations antedating the signing of the contract shows that the parties intended to preserve the maritime lien. The District Court held that the commissioner should not have gone outside the written contract to find an intention contrary to that therein expressed. The appellant argues that the door was opened for the introduction of such testimony by the appellee himself, and that he now is precluded from raising the question of its competency, and is bound by the commissioner's findings on the conflicting testimony. Bogk v. Gassert, 149 U. S. 17, 25, 13 S. Ct. 738, 37 L. Ed. 631; Sun Printing Co. v. Ed-

wards, 113 F. 445, 448 (C. C. A. 2); Brady v. Nally, 151 N. Y. 258, 264, 45 N. E. 547. Compare Higgs v. De Maziroff, 263 N. Y. 473, 189 N. E. 555. Witnesses for the claimant testified to the effect that Mr. Morse had orally agreed that there should be no lien; the libelant's witnesses contradicted them. The commissioner found that Morse had made no such agreement; he did not find that the parties had orally agreed that the libelant should have a lien, but ruled that the written contract did not waive it, since Morse himself had no intention to do so. But the subjective intention of the libelant, if contrary to the written memorial of the contract made by the parties, is immaterial. See Wigmore, Evidence (2d Ed.) §§ 2415, 2413, 2459. That the actual contract of the parties was not expressed by their written memorial but contained the additional term that the libelant should have a lien for the work to be paid for by the indorsed note was not proven. The commissioner made no such finding; nor could we, with the parol evidence so conflicting, even if its competency be granted.

■ There remains for consideration the contention that part of the repair work was entirely outside either of the written contracts. The appellant apportions its claim as follows: $79,640 to the contract of November 14th, $65,532.95 to the contract of January 16th, and $72,528.88 to "outside" work. The latter was performed under orders referred to as "tenders and acceptances" and "time and material acceptances." As to these orders it is contended that there was no agreement as to terms of payment except that the price to be charged for the execution of each order was agreed upon. If this were established, there would be no reliance upon the indorser's credit when each contract evidenced by an order was made, and no waiver of the maritime lien by acceptance of the note on March 11th because of the "without prejudice" letter. The District Court, however, found that the entire sum represented by the note was owing under the written contracts of November 14th and January 16th. If this finding is sustainable, the decree must be affirmed. In ascribing only $79,640 to the first contract, the appellant is clearly in error. That contract provided for doing whatever additional work was necessary to obtain classification certificates, and Epstein testified that orders were given for extra work required by United States inspectors and the American Bureau of Shipping. Most significant is the libelant's letter of February 2, 1925, giving the approximate amounts authorized by the owner up to January 28th. This listed "orig-inal contract and extras" ("extras" referring, as we interpret it, to "unit prices") as $76,800; "additional work on which prices have been quoted and accepted, approximately $50,000;" and "work being carried out on basis of new contract, i. e. cost plus 50% for overhead and profit, approximately $65,000." When this letter was written, the appellant itself seemed to recognize that all the work then under way was either under the "original" or the "new" contract. Without unduly lengthening this opinion by a detailed analysis of the several bills, it will suffice to say that an examination of the record and of the appellant's carefully prepared brief has not convinced us that the District Court's finding was wrong.

Accordingly the decree is affirmed.