## THE ODYSSEUS III.

### No. 119–T.

District Court, S. D. Florida,
Tampa Division.

April 3, 1948.

Burton G. Henson, of Tampa, Fla., for libelants.

William A. Gillen, of Tampa, Fla., for intervening libelant Earl E. Magee.

Oliver C. Maxwell and Charles Ross, both of Tampa, Fla., for intervening libelants Alfredo Duarte and Fernando De La Peza.

BARKER, District Judge.

C. C. Foster, trading and doing business as Tampa Marine Supply Company, and other original libelants filed a libel in rem against the motor vessel Odysseus III claiming maritime liens in divers amounts

for supplies furnished, wages, advances, etc.

Earl E. Magee filed an intervening libel in rem claiming a maritime lien in the sum of $615.90 for moneys advanced to pay certain repairs upon the vessel.

Alfredo Duarte and Fernando de la Peza filed an intervening libel in rem against the vessel claiming a maritime lien in the sum of $2063.39 for general average.

The vessel was attached by the Marshal and on the failure of any one to claim the same, was sold for the sum of $4700.00 pursuant to order of Court. There remains in the registry of the Court the sum of $4377.92 which amount is insufficient to pay the claims of the libelants and intervening libelants.

The sole questions for determination are whether certain claims made by some of the libelants and intervening libelants actually constituted maritime liens against the motor vessel Odysseus III and a determination of the priorities of the proved maritime liens and the distribution of the moneys on deposit in the registry of the Court.

■ The calendar year rule for determining the priority of maritime liens and the distribution of the funds in the registry of the Court is applicable in this case. Rubin Iron Works v. Johnson, 5 Cir., 100 F.2d 871; The Annette Rolph, D.C., 30 F.2d 191; The Little Charley D.C., 31 F.2d 120; The Fort Gaines, D.C., 24 F.2d 438. Therefore, maritime liens accruing in the calendar year 1947 are determined to be prior to liens accruing in the calendar year 1946 or 1945.

Several of the liens are of unquestioned validity and there is no dispute as to the amount which accrued in each calendar year. However, several of the claims were challenged on the grounds that the facts surrounding their acquisition were such that they could not create valid maritime liens.

1. *The claim of Charles Reed.*

■ The vessel was owned by Lomond Investments, Ltd., of which Robert J. Fearon, the master of the vessel, was a director, stockholder and officer. Fearon entered into a contract with Reed in January of 1947 whereby Fearon represented that he had an option to charter the vessel and agreed with Reed that he would use the vessel to carry cargo belonging to Reed from Tampa to Central American ports and from Central American ports to Tampa. Reed was to advance an initial $5,000.00 for purchase of cargo; was to pay Fearon $100.00 per month and Fearon and Reed were to divide the profits of the voyages. This contract was subsequently approved by the stockholders and directors of the owning corporation. Almost immediately after the contract was entered into Fearon pressed Reed for money to pay the crew and meet other necessary expenses preparatory to the ship making the initial voyage under Reed's and Fearon's contract, and Reed did advance a sum of $2500.00, a part of which was expended to pay items which, except for Reed's relationship to the vessel, would have constituted maritime liens.

In addition to the $2500.00 advanced by Reed, he advanced $615.90 more in February, 1947, under the following circumstances: The vessel had been repaired by the Tampa Marine Repair Company and was being held by it for a total repair bill of $1231.80. The repair company refused to part with possession of the vessel until some arrangements were made to pay or secure its claim. Since neither the master nor the owning corporation had funds with which to pay this claim, Reed and one Earl E. Magee, who was the husband of the president of the corporation but not himself a stockholder, director or agent, each agreed to advance the sum of $615.90 by check to the Tampa Marine Repair Company, which they did, and received a letter from the Tampa Marine Repair Company agreeing to hold the checks for a specified period of time, and if within that time the account was paid by the owning corporation, to return the checks, otherwise, to cash them. At the same time Reed and Magee entered into a contract with each other which provided, among other things, that in the event the aforesaid checks were cashed, that Reed and Magee should be subrogated to the maritime lien of Tampa Marine Repair Company.

Objection was made to the validity of all of Reed's claim on the basis that Reed was a joint venturer with Fearon and the owner of the vessel and that the advances which he had made had been made in furtherance of his joint venture and not on the credit of the vessel. I am of the opinion that this contention is correct as to the first $2500.00 advanced by Reed, and for this reason I am holding that Reed does not have a valid maritime lien for the $2500.00. Frontera Fruit Co. Inc. v. Dowling, 5 Cir., 91 F.2d 293; Rubin Iron Works v. Johnson, 5 Cir., 100 F.2d 871; The Gloucester, D.C.Mass., 285 F. 579; The Puritan, D.C.Mass., 258 F. 271; The Fort Gaines, D.C.Md., 24 F.2d 438; The Vedas, D.C.Fla., 17 F.2d 121.

However, with respect to the subsequent advance by Reed of $615.90 to pay the repair bill, I am of the opinion that Reed did not advance this money in furtherance of the joint venture, but advanced it on the credit of the vessel and is entitled to a maritime lien therefor. It has been argued that Reed, likewise, is not entitled to a maritime lien for this amount because the Tampa Marine Repair Company had waived its lien when it accepted the checks to release the vessel and that, consequently, Reed had no valid lien to which he could be subrogated. I do not agree with this contention and will discuss it in detail under the claim of Earl E. Magee.

### 2. The claims of Robert J. Fearon and George A. Collette.

■ Robert J. Fearon, as above stated, was the master of the vessel, stockholder, director and officer of the owning corporation. George A. Collette was the first mate of the vessel and, likewise, director, stockholder and officer of the corporation. Both filed claims for wages as master and mate respectively. Collette filed a claim in the total amount of $1687.00 of which $266.66 was for wages subsequent to February 25, 1947, and the balance for wages prior to that time. It appears from a stipulation in the record that on February 25, 1947, when the Reed contract was approved by Lomond Investments, Ltd., that Collette specifically waived any lien he might have had for wages up to that point, and even assuming

he could have had a valid lien, it is clear that his wages prior to February 25, 1947, have been waived. However, neither Fearon nor Collette can have a valid lien. Ordinarily a part owner of a vessel cannot obtain a lien against his co-owners, and within the meaning of this rule, a stockholder in a corporation owning a vessel is regarded as a part owner and more particularly a stockholder who is an officer and actively engaged in transacting the business of the company.

In 38 C.J. (Maritime Liens), Section 13, page 1201, it is said: "In the absence of statute, under ordinary circumstances a part owner of a vessel cannot obtain a lien against his coowners, and within the meaning of this rule a stockholder in a corporation owning a vessel has been regarded as a part owner, and more particularly a stockholder who is an officer and actively engaged in transacting the business of the company."

To the same effect see The Queen of St. Johns, C.C., N.D. Fla., 1886, 31 F. 24; Learned v. Brown, 5 Cir., 1899, 94 F. 876; The Gyda, D.C., 235 F. 266; The Puritan, D.C., 258 F. 271; The Natchez, D.C., 236 F. 588; The Cimbria, D.C., 214 F. 131; The Murphy Tugs, D.C., 28 F. 429; The Ajax, D.C., 34 F.2d 45; The Gloucester, D.C., 285 F. 579.

### 3. The claim of Earl E. Magee.

■ Earl E. Magee filed a claim of lien in the sum of $615.90 for the advance which he made at the same time as that of Charles Reed to secure payment of the repair bill of Tampa Marine Repair Company. Objection was made to the claims of Magee and Reed on the ground that Tampa Marine Repair Company, by accepting the checks of Magee and Reed as security for the payment of its repair bill, thereby waived any lien which it had against the vessel and that there was, consequently, nothing to which Magee or Reed could be subrogated. Marshall & Co. v. President Arthur, 279 U.S. 564, 49 S.Ct. 420, 73 L.Ed. 846; The President Arthur, 2 Cir., 1934, 72 F.2d 276. I disagree with this contention and find that Magee and Reed in securing the bill of the repair company were relying solely upon the credit of the vessel

and that the repair company knew and understood this and did not waive its lien by accepting their checks as security and that when their checks were cashed, Reed and Magee thereby became subrogated to the amount which they had paid to the repair company in satisfaction of its repair bill.

### 4. The claim of Humphrey & MacGregor.

■ Humphrey & MacGregor acted as agent for the ship in paying for certain services and supplies which were necessary for the ship's voyage. It was argued that Humphrey & MacGregor were not entitled to a maritime lien for these advances due to the fact they were general agents of the vessel, but under the circumstances of this case, I am of the opinion that Humphrey & MacGregor were not general agents but were merely special agents and are entitled to a maritime lien under authority of The Ascutney, D.C., 278 F. 991. Humphrey & MacGregor advanced $187.15 in 1947 and $47.35 in 1946 and are entitled to a maritime lien for these amounts in those particular years.

### 5. The claim of C. C. Foster, trading as Tampa Marine Supply Company.

There was no dispute as to the claim of C. C. Foster, trading as Tampa Marine Supply Company. He furnished supplies to the extent of $531.19 in the calendar year of 1947 and $1074.51 in the calendar year of 1946 and is entitled to a maritime lien in those amounts.

### 6. The claim of J. Frank Robinson, doing business as Marine Fuel Sales Company.

There is, likewise, no dispute to the claim of J. Frank Robinson, doing business as Marine Fuel Sales Company. He furnished fuel and supplies in the aggregate amount of $486.81 in the calendar year 1947 and $526.05 in the calendar year 1946 and is entitled to a maritime lien for these amounts.

### 7. The claims of the crew members.

Likewise, there is no dispute as to the validity of the claims of the members of the crew for their wages and I find they are entitled to liens in the calendar year 1947 in the following amounts: Edison Robinson, $179.40; William A. Stewart, $132.40; Walter Gibbs, $25.40; Augustus Joseph, $227.90; Ciby Smith, $25.00; Nathaniel Godding, $21.50; Cleveland Eden, $97.00.

### 8. The claim of P. Barrow.

P. Barrow, likewise, has a valid maritime lien against the vessel for supplies and equipment furnished during the calendar year 1945 in the amount of $51.10.

### 9. The claim of Alfredo Duarte and Fernando de la Peza.

■ This is a claim for general average contribution arising from the fact that in the year 1946 while the vessel was engaged in a voyage from Cuba to Tampa, Florida, it became necessary during a storm to jettison part of the cargo of pineapples owned by Alfredo Duarte in order to save the vessel. A general average adjuster was appointed by the master of the vessel and after crediting the ship for its damages as well as the cargo for its damage, the general average was struck at $2063.39 due Alfredo Duarte as the cargo owner. This is a valid maritime lien.

■ As above listed there are valid maritime liens accruing in the year 1947 in the aggregate sum of $3145.55. In 1946 there are three valid maritime liens; the general average contribution of Duarte and de la Peza in the amount of $2063.39, the materialmen's lien of C. C. Foster in the amount of $1074.51 and the materialman's lien of Robinson in the amount of $526.05. Consequently, the sum applicable to the 1946 liens is not sufficient to pay them all and it becomes necessary to determine priority of these liens. I am of the opinion that general average contribution is in the nature of salvage and outranks materialmen's liens. Provost v. The Selkirk, 20 Fed.Cas. No. 11,455; The Pine Forest, 1 Cir., 129 F. 700, 1 L.R.A., N.S., 873. I, therefore, conclude that after the payment of the valid 1947 maritime liens, the balance in the registry of the Court should be paid on the general average contribution lien. It appears that the amount remaining in the registry of the Court is insufficient to pay

the general average claim in full and nothing can, therefore, be paid on the 1945 and 1946 materialmen's liens. It is therefore,

Ordered that a final decree be entered pursuant to this opinion decreeing that the 1947 valid materialmen's liens herein set forth be paid in full and that the balance in the registry of the Court be paid to Alfredo Duarte and Fernando de la Peza and that the principals and sureties on the stipulations filed in this cause be relieved of further liability thereon.

It is further ordered that each of the respective claimants bear their own costs.