**In re SEAESCAPE CRUISES LIMITED, Debtor.**

**MADURO TRAVEL, INC., Appellant,**

v.

**SKANDINAVISKA–ENSKILDA BANKEN, Stena Cruise Lines, A.B., Fred Kassner and Ferry Charter Florida, Limited, Appellees.**

No. 94–0145–Civ.
Bankruptcy No. 91–11121–BKC–PGH.

United States District Court,
S.D. Florida.

Feb. 24, 1995.

Timothy Joseph Armstrong, Armstrong & Mejer, P.A., Coral Gables, FL, for Maduro Travel, Inc.

Jay M. Gamberg, P.A., Hollywood, FL, Jon Yard Arnason, Mark C. Flavin, James H. Hohenstein, Andrea Fischer, Alan Heblack, Haight, Gardner, Poor and Havens, New York City, for Skandinaviska Enskilda Banken.

Mark C. Flavin, Haight, Gardner, Poor and Havens, New York City, for Stena Cruise Lines, A.B.

Daniel D. Douglass, P.A., Ft. Lauderdale, FL, for Fred Kassner.

Robert A. Schatzman, Schantz, Schatzman, Aranson & Cahan, Miami, FL, for Ferry Charter Florida, Limited.

***FINAL ORDER AFFIRMING BANKRUPTCY COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING THE GUARANTORS' OBJECTIONS TO THE CLAIM OF MADURO TRAVEL, INC., DATED DECEMBER 23, 1993***

ARONOVITZ, District Judge.

BEFORE THIS COURT is an appeal from the Bankruptcy Court's Findings of Fact and Conclusions of Law Concerning the Guarantors' Objections to the Claim of Maduro Travel, Inc., dated December 23, 1993.

This Court heard oral argument on this appeal on November 3, 1994, and has carefully considered all briefs submitted on appeal, oral argument of counsel, the entire record, applicable law and is otherwise fully advised in the premises. For the following reasons, it is **ORDERED AND ADJUDGED** that the Bankruptcy Court's Findings of Fact and Conclusions of Law Concerning the Guarantors' Objections to the Claim of Maduro Travel, Inc., dated December 23, 1993, is hereby **AFFIRMED in its entirety.**

*Factual and Procedural Background*

Maduro Travel, Inc. ("Maduro Travel") booked airline tickets for SeaEscape crew members and passengers as well as provided a concierge or bellman program for SeaEscape vessels.

SeaEscape purchased airline tickets from Maduro Travel in order to transport personnel and crew members to vessels in different ports. Upon receipt of a ticket request from SeaEscape, Maduro Travel would search for the lowest air fare, issue a ticket and generate an invoice. Maduro Travel paid for the ticket through ARC automatic bank payment and Maduro Travel billed SeaEscape for the tickets and commissions.

Maduro Travel's concierge or bellman program with SeaEscape involved bellmen soliciting hotel guests in the Miami area in order to book them aboard particular SeaEscape ships. Maduro Travel established a network of bellmen to publicize each ship's services, handle reservations, accept cruise deposits, and provide transportation and boarding services. For example, a bellman would issue a ticket voucher to a passenger who would in turn present that voucher and pay the balance of the ticket at a special SeaEscape desk for Maduro Travel bellman-program passengers. The passenger would then be issued the SeaEscape contract of passage, the ticket and boarding pass.

In December 1989, SeaEscape terminated Maduro Travel's bellman program to reduce costs. However, on June 29, 1990, Maduro Travel resumed the bellman program at SeaEscape's request. The new bellman contract named S.E.L. Maduro (Florida), Inc., however, Maduro Travel provided the services.[1] SeaEscape committed to pay Maduro Travel a weekly retainer of $6,500.00 beginning on July 1, 1990, and to further pay operational/sales expenses for the program. From July 1, 1990 through March 1991, SeaEscape made no such payments.

On March 18, 1991, SeaEscape filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida. The following guarantors posted a guarantee for payment of valid pre-petition maritime lien claims against the following vessels:

(a) Skandinaviska–Enskilda Banken ("S.E. Banken") posted a guarantee for payment of valid pre-petition maritime lien claims against M/V Scandinavian Dawn ("M/V Dawn") and M/V Scandinavian Song ("M/V Song");

(b) Stena Cruise Lines A.B. ("Stena") posted a letter of credit to secure payment of valid pre-petition maritime lien claims against M/V Scandinavian Saga ("M/V Saga");

(c) Fred Kassner and Landesbank each posted a guarantee letter for 50% of payments of valid pre-petition maritime lien claims against M/V Scandinavian Sun ("M/V Sun").

Thereafter, Maduro Travel submitted amended proofs of claim of a maritime lien against four SeaEscape vessels.[2]

As of November 8, 1993, Maduro Travel's maritime lien claims were as follows:

| | |
|---|---|
| Maritime lien claim against M/V Song | $ 18,164.31 |
| Maritime lien claim against M/V Dawn | $405,555.20 |
| Maritime lien claim against M/V Saga | $ 97,388.27 |
| Maritime lien claim against M/V Sun | $156,644.22 [3] |
| TOTAL | $677,752.00 |

*Claim # 1062* is Maduro Travel's maritime lien claim against M/V Saga. Supporting documentation is comprised of invoices for airline tickets (October 28, 1990—March 15, 1991) and documents concerning concierge services (July 1990 and August 1990);

*Claim # 1063* is Maduro Travel's maritime lien claim against M/V Sun. Supporting documentation is comprised of invoices for airline tickets (May 4, 1990—March 18, 1991) and documents concerning concierge services (July 1990—March 17, 1991).

1. Maduro Travel, Inc. is a wholly-owned subsidiary of S.E.I. Maduro (Florida), Inc., and S.E.L. Maduro (Florida) held 9.31% of the shares in SeaEscape.

2. *Claim # 1058* is Maduro Travel's maritime lien claim against M/V Song. Supporting documentation is comprised of invoices for airline tickets (September 6, 1990—March 15, 1991);

 *Claim # 1060* is Maduro Travel's maritime lien claim against M/V Dawn. Supporting documentation is comprised of invoices for airline tickets (June 28, 1990—March 12, 1991) and documents concerning concierge services (October 1990—March 17, 1991);

3. The calculation as to M/V Sun reflects Landesbank's settlement on November 5, 1993. Since Landesbank has satisfied its obligation, only the

The Bankruptcy Court's Order Establishing Procedure for Adjudication of Certain Maritime Lien Claims required that any party in interest file objections to the validity and amount of the maritime lien claims no later than sixty (60) days after its entry date. Pursuant to the Order, Guarantors S.E. Banken, Stena, Landesbank, and Kassner (collectively "Guarantors") filed objections to Maduro Travel's maritime lien claims asserting that:

(a) Maduro Travel was not a stranger to the vessel(s) and as "insiders" have no maritime liens;

(b) Maduro Travel improvidently extended credit to the vessel(s) and thus the liens have been extinguished; and

(c) Maduro Travel did not rely upon the credit of the vessel(s) and thus have no maritime liens.

### Bankruptcy Court's Decision

The Bankruptcy Court held evidentiary hearings on November 8 and 9, 1993 with respect to the Guarantor's objections to Maduro Travel's claims. On December 23, 1993, United States Bankruptcy Judge Paul G. Hyman, Jr. made the following conclusions of law ("Order"):

A. *The Bankruptcy Court concluded that it lacked subject matter jurisdiction over the claims of Maduro Travel*

The Bankruptcy Court addressed whether Maduro's claims were "maritime" and therefore within its maritime jurisdiction. The Court found that the services provided by Maduro Travel, which were the basis for Maduro's claims, were **preliminary services** outside of the Court's maritime jurisdiction. *E.S. Binnings, Inc. v. M/V Saudi Riyadh*, 815 F.2d 660, 663–64 (11th Cir.1987) (a contract is **nonmaritime** if "the functions to be performed under the contract are 'of a preliminary nature and end when the freight is placed at the pier.'" [citations omitted]).

B. *The Bankruptcy Court concluded that Maduro Travel is not a stranger to the vessel, and cannot claim liens*

Bankruptcy Court cites authority that a party must be a "stranger" to the vessel to assert a lien. *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria*, 935 F.2d 208, 212–13 (11th Cir.1991). That is, shipowners, joint venturers, investors or shareholders in a shipowning corporation cannot have a valid maritime lien on a vessel in which they own an interest.

In this case, the Bankruptcy Court specifically found at page 11 of its Order:

Maduro Travel was and is a wholly-owned subsidiary of S.E.L. Maduro, who, in turn was a **shareholder** of SeaEscape. The extensive **inter-relationship** between Maduro Travel and S.E.L. Maduro was established through the testimony of Maduro Travel and S.E.L. Maduro witnesses. Mr. Jack McGovern is the President of both entities, and described himself as **"interchangeable."** Indeed, the concierge contract, which allegedly forms the basis for Maduro Travel's claims, actually named S.E.L. Maduro as the contracting party, and Mr. McGovern executed that agreement in his capacity as an S.E.L. Maduro officer. Any doubt which the Court had with respect to Maduro Travel's status, is dispelled when the Court notes that capital contributions to SeaEscape by Ripe and S.E.L. Maduro involved and applied sums due to Maduro Travel. In sum, Maduro Travel acted in conjunction with its corporate parent, S.E.L. Maduro and its related corporation, Ripe, to discharge those stockholder obligations to SeaEscape. It is, therefore, clear that Maduro Travel is not a stranger to SeaEscape or the vessels and as such cannot claim liens. (emphasis provided)

C. *The Bankruptcy Court concluded that Maduro Travel is estopped from claiming maritime liens of the vessel*

The Bankruptcy Court found that, based upon the testimony of the parties, the customary time for payment of invoices is thirty (30) days. Maduro Travel permitted arrearages to accrue for between 6 to 9 months with respect to the airline tickets and Madu-

50% of the maritime lien claim against M/V Sun

guaranteed by Kassner remains at issue.

ro Travel was never paid for concierge services from the time the program went into effect until SeaEscape's bankruptcy.

The Bankruptcy Court found that Maduro Travel's action in permitting the arrearages of such magnitude to accrue was improvident and Maduro Travel's failure to promptly enforce such liens estopped Maduro Travel from asserting any maritime liens in bankruptcy. *Citing, Tagaropulos, S.A. v. S.S. Santa Paula, Etc.,* 502 F.2d 1171, 1172–73 (9th Cir.1974); *Gulf Oil Trading Co. v. Creole Supply,* 596 F.2d 515 (2nd Cir.1979).

### D. *The Bankruptcy Court concluded that Maduro Travel did not rely on the credit of the vessels*

The Bankruptcy Court found that the statutory presumption that a party rendering services to a vessel has relied on credit of the vessel was overcome. When evidence shows a party advancing funds relied **solely** upon the credit of the *owner* and not the *vessel,* then enforcement of the lien has been refused. The Court found that the evidence adduced at the hearing demonstrated that Maduro Travel did not rely on the credit of the *vessels* and that "[w]hatever goods or services Maduro Travel provided were to *SeaEscape* as the owner/operator of the group of vessels rather than to individual *vessels.*" (underlining provided) *Order* at 17.

The Bankruptcy Court finally concluded that the "prohibition of lien" clauses contained in the mortgage documents would bar any assertion of liens by Maduro Travel because "[i]t would be inequitable for Mr. McGovern to deal on behalf of Maduro Travel, while ignoring for Maduro Travel's benefit knowledge and information which he would have acquired in his capacity as a SeaEscape director."[4] *Order* at 17–18.

Accordingly, the Bankruptcy Court sustained the Guarantors' objections and disallowed in full Maduro Travel's claim to *in rem* liens. Maduro Travel appeals.

### Standard of Review

 In accordance with Federal Rule of Bankruptcy Procedure 8013, the Bankruptcy Court's findings of fact will not be set aside unless clearly erroneous. *In re Chase & Sanborn Corp.,* 904 F.2d 588 (11th Cir.1990); *In re T & B General Contracting, Inc.,* 833 F.2d 1455 (11th Cir.1987). Equitable determinations by the Bankruptcy Court are subject to review under an abuse of discretion standard. *In re Red Carpet Corp. of Panama City Beach,* 902 F.2d 883 (11th Cir.1990). Conclusions of law are subject to *de novo* review. *In re Chase & Sanborn Corp.,* 904 F.2d at 593; *In re Sublett,* 895 F.2d 1381 (11th Cir.1990).

 While the Bankruptcy Court's factual findings are subject to a clearly erroneous standard, that standard does not apply when determining the propriety of the Bankruptcy Judge's conclusions of law, (i.e.) determination of what law applies or determination of the ultimate legal conclusions resulting from the application of the law to the facts. Legal conclusions made by the Bankruptcy Judge may not be approved by the District Court without an independent determination. *In re Columbia Data Products, Inc.,* 99 B.R. 682, 684 (D.Md.1989), *affirmed,* 892 F.2d 26 (4th Cir.1989); *citing, In re Hunter Sav. Ass'n,* 34 B.R. 368, 374 (S.D.Ohio 1983), *reversed on other grounds,* 750 F.2d 536 (6th Cir.1984); *In re Hollock,* 1 B.R. 212, 215 (M.D.Pa.1979). This Court has conducted a *de novo* or independent review of the Bankruptcy Court's legal conclusions in this case.

### Appellant Maduro Travel's Arguments on Appeal

Appellant Maduro Travel argues that the Bankruptcy Court erred in finding it lacked subject matter jurisdiction over Maduro's claims. Appellant asserts that maritime jurisdiction was never at issue because both

---

**4.** At all relevant times: S.E. Banken held mortgages on M/V Dawn; Kassner held a mortgage on M/V Sun; SeaEscape was the bareboat charterer of M/V Saga under the terms of a bareboat charter with Stena; and SeaEscape was the bareboat charterer of M/V Song under terms of a bareboat charter with Ferry. The mortgage documents and bareboat charters contained "prohibition of lien" clauses which prohibited SeaEscape from taking any action which would result in a lien or other encumbrance attaching to the vessels.

sides stipulated to jurisdiction. At page 2 of pre-trial stipulation, the parties agreed:

> 2. Basis of Federal Jurisdiction: The matter arises under 28 U.S.C. § 1333. Additionally, as the claims are maritime in nature, the Court's jurisdiction also arises under the Maritime Lien Act, 46 U.S.C.[App.] §§ 31341–31343 as well as the general maritime law of the United States.

Appellant claims the Bankruptcy Court erred in qualifying Maduro's services as "preliminary" in order to conclude it lacked jurisdiction. Appellant argues that the jurisdictional inquiry doesn't end when services are deemed "preliminary". The Court should have considered whether the agreement for services is **maritime in nature.** If the agreement is **maritime in nature,** then the Court has subject matter jurisdiction.

In support, Appellant cites to United States District Judge James Lawrence King's decision in *Venezuelan Container Line C.A. v. Navitran Corp.,* 792 F.Supp. 1281 (S.D.Fla.1991). *Venezuelan Container* follows the Supreme Court's ruling in *Exxon*[5] which teaches that the nature of the agreement for services needs to be considered in order to determine if the agreement is **maritime** and therefore within the Court's jurisdiction.

*Venezuelan Container* limits *Binnings* (relied on by the Bankruptcy Court) by stating:

> Since the Supreme Court [in *Exxon*] has recently taken this precise step [overruled the firmly established *Minturn* rule that agency contracts are outside admiralty jurisdiction], *E.S. Binnings* retains its vitality only to the extent that it holds that agency contracts for certain preliminary services are not maritime in nature. **After *Exxon,* it is necessary to determine if each agency agreement is maritime in nature, even if the contract is for preliminary services. (emphasis added)** *Id.* at 1283.

Appellant argues that the nature of its services were maritime and were "necessaries" for each ship, otherwise, there could be no voyage. Maduro Travel's billings for air-line tickets resulted in placing crew and passengers on specific ships at different ports and its concierge service provided passengers for the ships.

Next, Appellant argues that Maduro Travel was not an "insider", but a "stranger" to the vessels. Appellant claims that Maduro Travel was *not* a SeaEscape shareholder or a joint venturer and Maduro Travel had no ownership interest in any vessel operated by SeaEscape. Nor did Maduro Travel share in any profits and had no duty to share in losses.

The Bankruptcy Court found Maduro Travel to be an "insider" because Maduro Travel was a wholly-owned subsidiary of S.E.L. Maduro (Florida), Inc., a SeaEscape minority shareholder, and because of the inter-relationship between Maduro Travel and S.E.L. Maduro. Appellant argues that this Court should respect the separate personalities of a parent and subsidiary. Appellant claims that Maduro Travel was treated like any other vendor and the Bankruptcy Court erred in concluding it was an "insider".

Maduro Travel argues that the elements for estoppel cannot be shown in this case, namely proof of (1) an inexcusable delay in instituting suit and (2) prejudice to SeaEscape. Moreover, Maduro Travel asserts that the Guarantors' representative encouraged Maduro to continue to provide services while SeaEscape arranged new financing.

Appellant argues that Guarantors have not overcome the "very strong" presumption against Maduro Travel's alleged waiver of maritime claim. Appellant argues that Maduro Travel's expectation of payment from *parties* other than the *vessels* "is of no decisive significance" and does not diminish or destroy its maritime liens. *Citing, Stevens Technical Services, Inc. v. United States,* 913 F.2d 1521, 1536–37 (11th Cir.1990). Appellant claims it was not required to allege or prove reliance on the credit of the vessels in order to sustain its maritime lien. 46 U.S.C.A. § 31342(a)(3). Instead, Guarantors were required to prove that Maduro deliber-

---

**5.** *Exxon Corp. v. Central Gulf Lines, Inc.,* 500 U.S. 603, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991).

ately waived its maritime claim and relied solely on the personal credit of a person/entity other than the vessels. Appellant argues that the Guarantors did not meet their burden.

Finally, Appellant argues that no "prohibition of lien" clause in the vessel mortgage can preclude enforcement of the Maduro's liens. Appellant contends that Guarantors' objections did not raise this "prohibition of lien" argument and the Bankruptcy Court erred in considering it. The Court concluded that the "prohibition of lien" clauses contained in the mortgage documents would bar any assertion of liens by Maduro Travel because "it would be inequitable for Mr. Mc-Govern to deal on behalf of Maduro Travel, while ignoring for Maduro Travel's benefit knowledge and information which he would have acquired in his capacity as a SeaEscape director." *Order* at 17–18.

Appellant argues that proof of Maduro Travel's **actual knowledge** of the "prohibition of lien" clause was required for the Court to make such a conclusion. No documents including this clause were delivered to Maduro Travel and there is no evidence that Maduro Travel had actual knowledge of such clause when it provided services.

### Appellees Guarantors' Arguments on Appeal

Appellees note that the Bankruptcy Court found that:

"In the case of airline tickets, those matters involved a preliminary service, which precedes the maritime venture or is subsequent to the end of the maritime venture. Similarly, the concierge program involved shore based solicitation and that activity never reached beyond the pier." *See, Order* at p. 8.

Appellees' claim these findings are not clearly erroneous and that the Court properly relied upon the 11th Circuit's decision in *Binnings* for finding that Maduro's services were of a preliminary nature outside the Court's maritime jurisdiction.

With regard to Appellant's argument that the services were "necessaries", Appellees state:

"That argument is a transparent attempt to avoid the threshold issue of subject matter jurisdiction which the court below determined adversely to Maduro Travel. As the Court in *Binnings* noted, it is not a question of whether the services are necessaries, but whether their nature is maritime. *Binnings, supra,* at 665–67." Appellees' Brief at p. 31.

Appellees contend the nature of services was properly found preliminary and therefore outside the Court's maritime jurisdiction.

Appellees state that the Court properly recognized the well established rule that a party [Maduro Travel] who is not a stranger to a vessel through ownership may not assert a maritime lien against the vessel. *Citing, The Odysseus III,* 77 F.Supp. 297, 299 (S.D.Fla.1948); *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria,* 935 F.2d 208, 212–13 (11th Cir.1991).

The Bankruptcy Court found that Maduro Travel was a wholly-owned subsidiary of S.E.L. Maduro and S.E.L. Maduro was a shareholder in SeaEscape. Mr. McGovern was the President of both Maduro companies and described his relationship with the two corporations as "interchangeable." Appellees add that the bellman contract between SeaEscape and Maduro was signed by McGovern in his capacity as an S.E.L. Maduro officer. While S.E.L. Maduro was the contracting party, Maduro Travel actually performed the bellman services.

The Bankruptcy Court determined that Maduro Travel was not a "stranger" because of the inter-relationship between a shareholder [S.E.L. Maduro] and its wholly-owned subsidiary [Maduro Travel]. Appellees assert this conclusion is correct and supported by the record.

Appellees state that the undisputed testimony in this case clearly established that the customary time for payment of invoices in the maritime industry is 30 days. Moreover, Appellees argue that the record supports the Court's findings that Maduro Travel permitted arrearages to accrue for between 6 to 9 months with respect to the airline tickets and Maduro Travel was never paid for concierge

services from the time the program went into effect until SeaEscape's bankruptcy.

Appellees agree with the Bankruptcy Court that Maduro Travel's action in permitting the arrearages of such magnitude to accrue was improvident and Maduro Travel's failure to promptly enforce such liens estopped Maduro Travel from asserting any maritime liens in bankruptcy.

Appellees assert that the Bankruptcy Court properly found that Maduro Travel did not rely on the credit of any vessels owned by SeaEscape. Appellees argue the evidence shows that Maduro Travel relied solely on the credit of the owner SeaEscape, and not on the vessels. Therefore, the Bankruptcy Court could refuse to enforce Maduro's maritime liens.[6]

Finally, Appellees argue that the Court properly held that McGovern's presence on SeaEscape's board of directors resulted in his having knowledge of the "prohibition of lien" clause. This knowledge was imputed to Maduro Travel because McGovern was president of Maduro Travel. Accordingly, Appellees argue that Maduro Travel could not have relied on the credit of the vessels because Maduro Travel, through its president, had knowledge of the "prohibition of lien" clause.

### Discussion

Upon careful review of the arguments presented, the entire record and applicable law, this Court finds that the Bankruptcy Court incorrectly determined that it lacked subject matter jurisdiction in this case. However, this incorrect finding by the Bankruptcy Court does not change the result in this case because this Court concludes that the Bankruptcy Court properly sustained the Guarantors' objections and denied Maduro Travel's maritime claims based upon well reasoned conclusions of law that: (1) Maduro Travel was an insider and not a stranger, (2) Maduro Travel was estopped from claiming maritime liens, and (3) Maduro Travel did not rely on the credit of the vessels.

*Subject matter jurisdiction*

■ The Bankruptcy Court found that Maduro Travel's services were **preliminary** services outside of the Court's maritime jurisdiction relying on *Binnings, supra.* However, just because Maduro Travel's services can be termed **"preliminary"** by the Bankruptcy Court does not in all cases make Maduro's claim for such services **nonmaritime** and outside the Court's jurisdiction.

Judge King's decision in *Venezuelan Container Line C.A. v. Navitran Corp., supra,* follows the Supreme Court's ruling in *Exxon* which teaches that the nature of the agreement for services needs to be considered in order to determine if the agreement is **maritime** and therefore within the Court's jurisdiction.

Judge King in *Venezuelan Container* limits *Binnings* by stating:

Since the Supreme Court [in *Exxon*] has recently taken this precise step [overruled the firmly established *Minturn* rule that agency contracts are outside admiralty jurisdiction], *E.S. Binnings* retains its vitality only to the extent that it holds that agency contracts for certain preliminary services are not maritime in nature. **After *Exxon*, it is necessary to determine if each agency agreement is maritime in nature, even if the contract is for preliminary services. (emphasis provided)** *Venezuelan Container Line C.A. v. Navitran Corp.,* 792 F.Supp. at 1283.

Judge King goes on to explain the "test" for determining whether an agreement is **maritime in nature** and within the Court's jurisdiction:

In order to be considered **maritime,** there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry, for the very basis of the

**6.** Appellees state Maduro's own witnesses admitted they did not know which vessels were involved with the airline tickets and, after SeaEscape went into bankruptcy, most of the invoices were forwarded to SeaEscape so that an unidentified SeaEscape employee could write the name of the vessel on the invoices so Maduro could identify the lien claims. Also, Maduro Travel attempted to allocate the concierge service to specific vessels after bankruptcy, although Maduro billed SeaEscape for such services without reference to specific vessels.

constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping. *Citing,* 1 *Benedict on Admiralty* § 182 (7th Ed.1991).

Applying Judge King's test to our case, there appears a direct and substantial link between the Maduro travel's ticket and concierge services and the operation of the cruise ships. The airline tickets were necessary to get the crew to the proper ships in different ports. The concierge service provided passengers to the ships. Consequently, this Court finds that SeaEscape's contract with Maduro is **maritime** and therefore within the Court's jurisdiction.

This Court, in its September 30, 1994 decision in *In re SeaEscape Cruises, Ltd.,* 172 B.R. 1002 (S.D.Fla.1994), found that:

> Pursuant to § 31342(a)(1) of the Federal Maritime Law Act, "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner has a maritime lien on the vessel." *See* 46 U.S.C. § 31342(a)(1); *see also, Thorsteinsson v. M/V Drangur,* 891 F.2d 1547, 1551 (11th Cir.1990) ("Congress has protected those who furnish supplies and other necessaries to vessels, granting such persons maritime liens against the vessel") . . . The maritime lien arises at the moment "when the goods or services are supplied or performed in the United States." *Gulf Trading & Transportation Co. v. The Vessel Hoegh Shield,* 658 F.2d 363, 367 (5th Cir.1981), *cert. denied,* 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982).

*Id.* at 1008.

The law stated in this Court's prior *SeaEscape* decision further supports the conclusion that Maduro Travel had valid maritime liens in this case since Maduro Travel's services could be considered "necessaries" giving rise to maritime liens within the meaning of 46 U.S.C. § 31342(a)(1). Accordingly, the Court finds that the Bankruptcy Court erred in

finding it lacked subject matter jurisdiction over Maduro's claims.[7]

■ However, this does not change the result of the Bankruptcy Court's Order since this Court finds that the Bankruptcy Court's further legal conclusions are proper and bar Maduro's entitlement to such maritime claims.

*Maduro Travel is not a stranger to the vessel, and cannot claim liens*

As noted herein, the Bankruptcy Court specifically found at page 11 of its Order:

> Maduro Travel was and is a wholly-owned subsidiary of S.E.L. Maduro, who, in turn was a **shareholder** of SeaEscape. The extensive **inter-relationship** between Maduro Travel and S.E.L. Maduro was established through the testimony of Maduro Travel and S.E.L. Maduro witnesses. Mr. Jack McGovern is the President of both entities, and described himself as **"interchangeable."** Indeed, the concierge contract, which allegedly forms the basis for Maduro Travel's claims, actually named S.E.L. Maduro as the contracting party, and Mr. McGovern executed that agreement in his capacity as an S.E.L. Maduro officer. Any doubt which the Court had with respect to Maduro Travel's status, is dispelled when the Court notes that capital contributions to SeaEscape by Ripe and S.E.L. Maduro involved and applied sums due to Maduro Travel. In sum, Maduro Travel acted in conjunction with its corporate parent, S.E.L. Maduro and its related corporation, Ripe, to discharge those stockholder obligations to SeaEscape. **It is, therefore, clear that Maduro Travel is not a stranger to SeaEscape or the vessels and as such cannot claim liens. (emphasis provided)**

Appellant has not shown these findings to be clearly erroneous. Moreover, upon *de novo* review of the Bankruptcy Court's conclusion that Maduro Travel is not a stranger to SeaEscape or the vessels and as such

---

7. Even though the parties stipulated to jurisdiction in this case and Appellant argues the Court erred in finding it lacked subject matter jurisdiction, the Bankruptcy Court could consider whether it had subject matter jurisdiction at any time. *See,* Fed.R.Civ.P. 12(h)(3): "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

cannot claim liens, this Court finds this legal conclusion to be correct and supported by law. *See, The Odysseus III,* 77 F.Supp. 297 (S.D.Fla.1948); *P.T. Perusahaan Pelayaran Samudera Trikora Lloyd v. T.S. Salzachtal,* 373 F.Supp. 267 (E.D.N.Y.1974); *Fulcher's Point Pride Seafood, supra; Security Pacific Nat'l Bank v. Ol.s. Pacific Pride,* 549 F.Supp. 53 (W.D.Wash.1982); *In re Good Ship Appledore, Ltd.,* 122 B.R. 821 (Bankr. D.Me.1990).

*Maduro Travel is estopped from claiming maritime liens of the vessel*

■ The Bankruptcy Court found that, based upon the testimony of the parties, the customary time for payment of invoices is thirty (30) days. Maduro Travel permitted arrearages to accrue for between 6 to 9 months with respect to the airline tickets and Maduro Travel was never paid for concierge services from the time the program went into effect until SeaEscape's bankruptcy. The Bankruptcy Court found that Maduro Travel's action in permitting the arrearages of such magnitude to accrue was improvident and Maduro Travel's failure to promptly enforce such liens estopped Maduro Travel from asserting any maritime liens in bankruptcy. These findings are supported by the record. Upon *de novo* review, this Court finds that the Bankruptcy Court properly concluded that Maduro Travel was estopped from claiming maritime liens of the vessel. *See, Tagaropulos, S.A., supra; Gulf Oil Trading Co., supra.*

*Maduro Travel did not rely on the credit of the vessels*

■ The Bankruptcy Court found that the statutory presumption that a party rendering services to a vessel has relied on credit of the vessel was overcome. The Court found that the evidence adduced at the hearing demonstrated that Maduro Travel did not rely on the credit of the *vessels* and that "[w]hatever goods or services Maduro Travel provided were to *SeaEscape* as the owner/operator of the group of vessels rather than to individual *vessels.*" (underlining provided) *Order* at 17. The Bankruptcy Court went on to state:

> Thus, in the absence of any credible, contemporaneous evidence presented by Ma-

duro Travel to identify which services were provided to a specific vessel, it must be inferred that the services were rendered to SeaEscape as the owner/operator of a group of vessels, and thus conclude that Maduro Travel is not entitled to maritime liens. *Order* at 17.

Appellant has not demonstrated that these findings are clearly erroneous, as these findings are supported by the record. This Court has further reviewed *de novo* the Bankruptcy Court's conclusion that Maduro Travel did not rely on the credit of the vessels thereby precluding the enforcement of Maduro's claims of maritime liens. This Court finds that this conclusion of law is proper and supported by law. *See, Equilease Corp. v. M/V Sampson,* 793 F.2d 598 (5th Cir.1986), *cert. denied,* 479 U.S. 984, 107 S.Ct. 570, 93 L.Ed.2d 575 (1986); *Itel Containers Int'l Corp. v. Atlanttrafik Express Service, Ltd.,* 982 F.2d 765 (2nd Cir.1992).

Finally, this Court agrees with the Bankruptcy Court's conclusion that the "prohibition of lien" clauses contained in the mortgage documents would bar any assertion of liens by Maduro Travel because "[i]t would be inequitable for Mr. McGovern to deal on behalf of Maduro Travel, while ignoring for Maduro Travel's benefit knowledge and information which he would have acquired in his capacity as a SeaEscape director." *Order* at 17–18.

Accordingly, this Court ratifies and affirms the Bankruptcy Court's Order which sustains the Guarantors' objections and denies Maduro Travel's claim to *in rem* liens.

In summary and for the reasons set forth herein, it is **ORDERED AND ADJUDGED** that the Bankruptcy Court's Findings of Fact and Conclusions of Law Concerning the Guarantors' Objections to the Claim of Maduro Travel, Inc., dated December 23, 1993, is hereby **AFFIRMED in its entirety.**

DONE AND ORDERED.